[Civ. No. 1971.   Third Appellate District.—June 12, 1919.]

PATTERSON GLASS CO. (a Corporation), Appellant, v. HERBERT THOMAS et al., Respondents.

[1] EMPLOYER AND EMPLOYEE—INDUCING EMPLOYEE TO BREAK CONTRACT—LIABILITY OF THIRD PERSON.—It is actionable for a third person having knowledge that an employee is working under contract, to induce such employee to break his contract.

[2] ID.—AGREEMENT OF EMPLOYEE TO GIVE NOTICE OF QUITTING—RIGHT OF LABOR ORGANIZATION TO CAUSE EMPLOYEES TO BREAK.—A labor organization has no right, by peaceable or other means, to cause employees who have agreed not to quit their employment without first having given seven days' notice of their intention so to do, to break such agreement.

[3] ID.—RIGHT OF EMPLOYEE TO QUIT.—An employee may, with or without reason, stop work, if by so doing he does not violate his contract; and where there are no contractual relations, employees may strike without notice.

APPEAL from a judgment of the Superior Court of San Joaquin County. George F. Buck, Judge. Reversed.

The facts are stated in the opinion of the court.

Gordon A. Stewart and R. C. Minor for Appellant.

Ben Berry and Lawrence Edwards for Respondents.

CHIPMAN, P. J.—A general demurrer to the amended complaint of plaintiff was sustained, plaintiff was given

1. Liability of third person for inducing employee to break contract, notes, 21 L. R. A. 233; 16 L. R. A. (N. S.) 746; 28 L. R. A. (N. S) 615; L. R. A. 1915F, 1076.

Injunction against inducing or aiding breach of contract, notes, 11 L. R. A. (N. S.) 202; L. R. A. 1917C, 782.

3. Right in aid of strike to employ peaceable persuasion to induce persons not under contract to quit or not accept employment, note, 41 L. R. A. (N. S.) 453.

leave to file a second amended complaint, and, upon its failure so to do, judgment of dismissal was entered, from which judgment plaintiff prosecutes this appeal upon the judgment-roll.

The sole question presented for decision is: Does the amended complaint state facts sufficient to constitute a cause of action?

The complaint alleges: That plaintiff is a California corporation doing business at the city of Stockton, in San Joaquin County, being engaged in the business of manufacturing and selling window glass and operating a glass plant for that purpose; that, in the operation of its plant, it is necessary that plaintiff should have in its employ skilled artisans; that "to that end and purpose the plaintiff entered into a contract during the month of September, 1917, at which time it commenced the operation of its plant, with approximately seventy-five artisans to work for the plaintiff during the season of 1917–18, under the terms of which contract of employment the plaintiff agreed that the said artisans could work for the plaintiff during said period of time, and that so long as said artisans faithfully discharged their duties in the employ of plaintiff the plaintiff would not discharge any of said artisans without giving to said discharged artisans seven days' notice prior to the date when said discharge became effective, and in like manner each of said artisans agreed with the plaintiff that he would not quit the employ of the plaintiff during said season, unless prior to quitting such employ, he gave to the plaintiff seven days' notice of his intention to leave the services of the plaintiff; that the foregoing mentioned artisans being insufficient in number to meet the requirements of the plaintiff, it was compelled to and did during the month of September, 1917, enter into a contract with approximately thirty artisans" in different cities of the United States "to leave their homes and come to Stockton, California, to work for the plaintiff in its plant"; that plaintiff agreed to pay their traveling expenses and said artisans agreed to work for so long a period as would be necessary to repay to plaintiff, in weekly installments, the moneys so advanced as traveling expenses, and that a similar agreement as above mentioned, regarding seven days'

notice, was entered into between said artisans and the plaintiff.

It is then alleged that the defendant, National Window Glass Association, "is a voluntary unincorporated association of individuals," composed of workers in the window glass business, and that defendants, Thomas and Pickering, are members thereof; that its office and principal place of business is in Cleveland, Ohio; "that the business of said association is the collection of dues and fines from said members, the fixing of hours of labor and the compensation of said members; . . . that the compensation of said members is based upon the value of the product produced by their labor; that the said association, for the purpose of increasing the sale cost of glass, limits the production of said glass by prohibiting its members from engaging as journeymen in the manufacture of window glass except for such duration of time in each year as may be designated by the association; that it has been the custom of said association to limit the annual output of glass by refusing to permit its members to work for a certain number of months in a year; that the association in the fall of each year fixes its scale of wages to be paid to its members by employers; that until said wage scale goes into effect, its members are not to perform any services as journeymen to any employers; that said association gave notice to the plaintiff that it would not permit its members to work for plaintiff prior to the first day of December, 1917; that the plaintiff opened its plant for the manufacture of glass upon the fifteenth day of September, 1917, and thereupon received in its employ a large number of journeymen window glass artisans who were members of said association; that no dispute exists between the plaintiff and its employees as to the hours of labor or compensation and said employees are satisfied and content with their employment."

It is next alleged that, during the month of September, 1917, "the defendants entered into a combination, federation, and conspiracy for the purpose of coercing the plaintiff to shut down its plant and not to operate the same until such time as the said defendants would consent thereto, the object and purpose of said combination, confederation, and conspiracy being to limit the output of glass, restricting its manufacture and thereby increasing

the cost of production to the consuming public, and out of the increased cost so manipulated to increase the wages of said members employed in the manufacture of window glass." That defendants, for said purposes, "are seeking to induce, procure, and entice the said artisans to quit their employment with the plaintiff, without giving any notice to said plaintiff, . . . and to that end and purpose are promising divers employees of the plaintiff that in the event that such employees abandon their contract of employment with the plaintiff, said defendants will pay money to said employees in the way of living expenses of said employees to the first day of December, 1917, and at said last-mentioned time, will transport, at the expense of the defendants, the said employees so abandoning their contracts" to eastern points where they might find employment; that the acts of the defendants are for the purpose of rendering the operation of plaintiff's plan unprofitable and that skilled workmen are not available in California to take the places of any employees who may be induced to leave plaintiff's employment. It is further alleged: "That it would be extremely difficult in a suit of law for the plaintiff to ascertain the amount of compensation which would equalize the damages sustained by it in the enticement of its employees from its service. That said damages would result from the loss of material and overhead expenses resulting from the decreased output of the plant, depreciation in the value of the glass products by its not being handled seasonably at the proper time, the fluctuating market in the sale of glass, and the expenses of procuring or endeavoring to procure other employees to fill the places of those who are enticed from its employment, and the cost of transporting said employees from eastern points to Stockton, California. That these and other damages which will result to the plaintiff if the defendants are permitted to entice from its employment its skilled artisans are extremely difficult to ascertain and an action at law against said defendants would not afford adequate relief." Also, "that the plaintiff is informed and believes that all of the defendants, save and except the National Window Glass Workers' Association, are insolvent and judgment proof. That the assets of the National Window Glass Workers' Association, if any, are without the state of California, and beyond the

process of this court. That by reason of these facts, the plaintiff alleges that it has no plain, speedy or adequate remedy at law. That said defendants threaten to and will, unless restrained by this court, continue to solicit and to entice plaintiff's employees from its employment to the great and irreparable injury of said plaintiff.'' The prayer is that defendants and each of them be ''enjoined and restrained from knowingly and intentionally causing or attempting to cause by threats, offers of money, payments of money, offering to pay expenses, or by any like inducement or persuasion, any employee of the plaintiff under contract of hire to break such contract to render service to the plaintiff, by quitting the plaintiff's employment, or from knowingly and intentionally causing, or attempting to cause, by threats, offers of money, payments of money, offering to pay expenses, or by like inducement or persuasion, any employee of the plaintiff to quit his employment, or preventing or deterring them or any of them from rendering services to the plaintiff by any like means, scheme or plan; and for such other and further relief as to the court seems meet and equitable.''

In support of the order sustaining the demurrer the respondents advance certain propositions: 1. Attention is called to the averments of the complaint in which it was stated that an agreement existed between plaintiff and its employees that so long as the latter faithfully discharged their duties plaintiff would not discharge any of them without giving seven days' notice, and that the employees agreed to give like notice before quitting the employ of plaintiff. It is hence claimed that the only definite time specified was for a period of seven days. Cyc. is quoted as follows: ''When the complaint alleges a contract of employment for a period of time, no recovery can be had where there is no evidence of a contract for a definite term of service.'' (26 Cyc. 1585.)

Section 1999 of the Civil Code is then quoted, which reads: ''An employment, having no specified term, may be terminated at the will of either party, on notice to the other. Employment for a specified term shall mean an employment for a period greater than one month.'' It is contended that if the period of time is less than a month, the employment may be terminated at will, for the statute

provides first what shall and what shall not be considered a "specified term." It is further claimed that the complaint nowhere alleges that defendants knew or were informed that any contract of employment existed between plaintiff and its employees and hence defendants "had a right to assume that the employment of the members of defendant association was upon a contract of employment at will."

It is alleged in the complaint that certain of plaintiff's employees were contentedly working under wages and conditions satisfactory to them; that requiring more artisans and not being able to obtain them in California, plaintiff sent to eastern states and entered into contracts with thirty artisans by which it was agreed that they would go to work for plaintiff on the same terms as the others were working under and they further agreed to work until they had by their wages paid to plaintiff the money plaintiff had advanced to bring them to California. And it is alleged that these men will shortly arrive at Stockton, "and that said defendants, conspiring one with the other, threaten to and will, unless they are restrained by the order of this court, induce, persuade, and entice said persons by the use of money and by threats and intimidation, to violate the terms of their contract and will induce, persuade, and entice said persons to leave the plaintiff's employ and depart from the state of California."

The men who were there at work had voluntarily entered into these contracts and were engaged in the performance of their duties when defendants appeared upon the scene and commenced their propaganda and persuasions, as alleged in the complaint, to induce these men to quit work, the result of which, if successful, would necessarily cause plaintiff to shut down its establishment and cease its productive activities. That such an injury may not be adequately compensated in damages but may only be thwarted by injunctive relief is manifest.

In closing their brief, defendants, after a somewhat extended examination of the cases and text-books, including the California cases, state the following as the result: "1. Where a third person has knowledge of a lawful contract existing between employer and employee, to induce such employee to break his contract, is actionable whether

done in good faith or not. 2. Where the employment is at will, to maliciously induce an employee to quit is actionable, but not otherwise.''

The complaint does not specifically and in terms charge knowledge by defendants of the contract of employment. Referring to the employees then at work, the complaint (paragraph V) states that defendants ''are seeking to induce, procure, and entice the said artisans to quit their employment with the plaintiff, without giving any notice to said plaintiff, and are seeking to induce them to leave the employ of the plaintiff, and to that end and purpose are promising divers employees of the plaintiff that in the event that such employees abandon their contract of employment with the plaintiff, that said defendants will pay money to said employees in the way of living expenses of said employees to the first of December, 1917, and at said last-mentioned time will transport, at the expense of the defendants, the said employees so abandoning their contract of employment with the plaintiff from Stockton, California, to eastern points where they might find employment in their respective trades.''

We think, that by fair implication, it sufficiently appears that defendants knew that the employees of plaintiff were working under a contract with plaintiff. An inference that they were ignorant of the fact that a contract existed is inconsistent with the averments of the complaint. One of the points contended for by defendants was that the men should not work until December 1st, whereas some were then at work and others expected to commence work. By seeking to induce them not to go to work until December 1st and to cease work until that time defendants lend aid to the inference that they knew they were endeavoring to cause the employees to break the existing contract of employment under which they were working.

The acts which it was charged defendants were committing seem to have been directed to bringing about a breach of their contracts by the employees in respect to the express terms of their contracts, and this gives rise to the implication that defendants must have known, not only that the employees were working under contract engagements, but that they knew the terms of the contracts. We do not think, however, that it was necessary to allege specifically

what the terms were. The defendants are charged with seeking to induce plaintiff's employees to quit work without giving any notice; they are promising to furnish the employees with money to cover their living expenses if they would break their contract; that they would furnish them money to pay their expenses in returning to the states from whence they came; these and like averments, admitted by the general demurrer, would seem to show that defendants had knowledge that plaintiff's employees were working under existing contracts.

We confess some difficulty in determining just what was intended by the legislature in the enactment of section 1999 of the Civil Code. But, whatever the intention was and whatever its meaning, it cannot be held to dispute the facts, admitted by the demurrer, that plaintiff's employees were working under contract engagements and, among other things, had agreed not to quit work without giving seven days' notice. In addition, the employees soon to arrive from the east were under contract to work until they had repaid to plaintiff the advances of money made by plaintiff in transporting them to California. We do not believe that the section of the Civil Code relied upon should be given a construction which would justify a court of equity in holding that these employees were working "at will," i. e., that they could quit work without notice and without paying plaintiff its money advances. What the section may mean as to the mutual relation of employer and employee, it was not intended that third persons could with impunity induce the employees to violate their contract and thus evade the lawful right of the employer to their services. If the section may be construed as between employer and employee that the engagement was "at will," it cannot mean that the employee was working at the will of a third person.

The questions here involved have had the attention of the courts in many cases and under great variety of circumstances. [1] Certain principles have been settled with but little disagreement—defendants' proposition that it is actionable for a third person having knowledge that an employee is working under contract, to induce such employee to break his contract, may be set down as one of these settled principles. Indeed, some of the courts have held that such acts

are actionable where no contract for a specified period exists.

In *Hitchman Coal & Coke Co.* v. *Mitchell*, 245 U. S. 229, 251, [Ann. Cas. 1918B, 461, L. R. A. 1918C, 497, 62 L. Ed. 260, 38 Sup. Ct. Rep. 65, 72], the court said: "Plaintiff, having in the exercise of its undoubted rights established a working agreement between it and its employees, with the free assent of the latter, is entitled to be protected in the enjoyment of the resulting status, as in any other legal right. That the employment was at will, and terminated by either party at any time, is of no consequence." The writer of the opinion quotes as follows from *Truax* v. *Raich,* 239 U. S. 33, 38, [Ann. Cas. 1917B, 283, L. R. A. 1916D, 545, 60 L. Ed. 131, see, also, Rose's U. S. Notes]: "It is said that the bill does not show an employment for a term, and that under an employment at will the complainant could be discharged at any time, for any reason or for no reason, the motive of the employer being immaterial. The conclusion, however, that is sought to be drawn is too broad. The fact that the employment is at the will of the parties, respectively, does not make it one at the will of others. The employee has manifest interest in the freedom of the employer to exercise his judgment without illegal interference or compulsion and, by the weight of authority, the unjustified interference of third persons is actionable although the employment is at will." (Citing many cases.) Pursuing the subject the court said: "In short, the plaintiff was and is entitled to the goodwill of its employees, precisely as a merchant is entitled to the goodwill of his customers although they are under no obligation to continue to deal with him. The value of the relation lies in the reasonable probability that by properly treating its employees, and paying them fair wages, and avoiding reasonable grounds for complaint, it will be able to retain them in its employ, and to fill vacancies occurring from time to time by the employment of other men on the same terms. The pecuniary value of such reasonable probabilities is incalculably great, and is recognized by the law in a variety of cases." (Citing cases.)

In the Hitchman case the defense was advanced that all measures may be resorted to if they are "peaceable"— that is, if they stop short of physical violence, or coercion

through fear of it. The court said: "In our opinion, any violation of plaintiff's legal rights contrived by defendants for the purpose of inflicting damage, or having that as its necessary effect, is as plainly inhibited by the law as if it involved a breach of the peace. A combination to procure concerted breaches of contract by plaintiff's employees constitutes such a violation." (Citing cases.)

*Eagle Glass & Mfg. Co.* v. *Rome,* 245 U. S. 275, [62 L. Ed. 286, 38 Sup. Ct. Rep. 89], is similar to the Hitchman case, and was decided upon the authority of that case. Upon the question of employment "at will" the case of *George Jonas Glass Co.* v. *Glass Bottle Blowers' Assn.,* 77 N. J. Eq. 219, [41 L. R. A. (N. S.) 445, 79 Atl. 262]; *Folsom* v. *Lewis,* 208 Mass. 336, [35 L. R. A. (N. S.) 787, 94 N. E. 316], are instructive.

[2] We do not think it necessary in the present case to follow these cases in their view as to engagement "at will," for here, we think, were contracts which defendants had no right, by peaceable or other means, to cause the employees to break. [3] Our supreme court seems to have held that an employee may, with or without reason, stop work, if by so doing he does not violate his contract, and where there are no contractual relations, employees may strike without notice. (*Parkinson Co.* v. *Building Trades Council,* 154 Cal. 594, [16 Ann. Cas. 1165, 21 L. R. A. (N. S.) 550, 98 Pac. 1027]; *Pierce* v. *Stablemen's Union,* 156 Cal. 70, [103 Pac. 324].) Holding, as the learned trial judge did, that no contract was pleaded, he probably regarded the object of defendants to be lawful. If so, we think, his decision was without a sustaining premise.

We quote from the text-books as follows: "The doctrine that it is not lawful to induce to quit employment applies even in the absence of any contract to serve for a fixed period, *a fortiori* does not apply to inducing to quit employment in violation of a contract to serve for a fixed period." (Cooke on Combination, Monopolies, and Labor Unions, sec. 67.)

"Where a union (by statute made liable to be sued) or its officers or members, intentionally and without just cause or excuse, induces another's employees to quit his service in breach of their contracts of employment, he is entitled to recover the damages resulting from such tortious acts, from

such union, or from such combination of officers or members, and this has been held true whether the means used is peaceable persuasion, or intimidation, or threats or abusive language or a system of espionage. Procuring a breach of such contracts is not justifiable as legitimate trade competition, and it is immaterial that those inducing the breach of contract acted in good faith and without ill will toward the employer.'' (Martin on Modern Laws of Labor Unions, sec. 207.) The right to injunctive relief is no longer questioned and it is no justification that defendants acted without ill will but in good faith in pursuance of the provisions of the constitution of the union prohibiting its members from working with nonunion men, the employer not being aware of or a party to such provisions. ''The rule applies where the means to procure the breach of contract are mere molestation or annoyance, payment of money or of transportation advances, abusive language, or violence or threats of violence, and where no justification is shown the rule is applicable where the method employed to procure the breach of contract is persuasion.'' (Ibid, sec. 209.)

In *Thacker Coal & Coke Co.* v. *Burke,* 59 W. Va. 253, [8 Ann. Cas. 885, 5 L. R. A. (N. S.) 1091, 53 S. E. 161], it was held that ''persons who conspire to induce others to break a valid contract between other persons are liable to actions therefor.''

In *Frank* v. *Herold,* 63 N. J. Eq. 443, [52 Atl. 152], the court said: ''Where the relation of master and servant exists, the law is quite clear that no person has a right to entice away another servant. The right of a master to have his servant continue in his employ without molestation is a recognized property right.'' This doctrine finds support in many cases, among which are the following: *Brown Hardware Co.* v. *Indiana Stove Works,* 96 Tex. 453, [73 S. W. 800]; *Butterfield* v. *Ashley,* 6 Cush. (Mass.) 249; *Bixby* v. *Dunlap,* 56 N. H. 456, [22 Am. Rep. 475]; *Haskins* v. *Royster,* 70 N. C. 601, [16 Am. Rep. 780]; *Jones* v. *Blocker,* 43 Ga. 331.

Some objection is made to the complaint in failing to state the particular acts or facts relating to the things which it is alleged have been done or that defendants threatened to do. The foregoing, however, disposes of the

grounds on which, counsel seem to agree, the trial court sustained the demurrer, and is, we think, decisive.

The judgment is reversed.

BURNETT, J., Concurring.—I concur in the judgment and generally in the opinion of the presiding justice. It is admitted by respondents that "where a third person has knowl edge of a lawful contract existing between employer and employee, to induce such employee to break his contract, is actionable whether done in good faith or not." Assuming that to be the law, we must hold that the complaint—while admittedly imperfect—is sufficient as against a general demurrer. It does appear, as pointed out in the main opinion, that defendants had knowledge of the contract, although it is to be regretted that such fact was not explicitly alleged. That the contract between plaintiff and its employees was and is lawful, of course, does not admit of doubt. And that it sufficiently appears that defendants have not only conspired together for the purpose of inducing the employees to break such contract, but are actually engaged in the effort to induce them to discontinue and abandon their employment, I think cannot be successfully controverted. In my opinion, there is much of surplusage in the complaint and I feel satisfied that it is open to attack on the ground of uncertainty in certain particulars. But we are called upon to deal with the single question whether it states facts sufficient to constitute a cause of action. Accepting the law applicable to the case as stated by respondents themselves, it seems to me we must hold the complaint sufficient. In considering the case, it is not improper to notice that the conduct of respondents relates not only to those artisans in the east who have contracted to work, but have not yet entered upon their employment, but it has reference also to the employees who were actually engaged in carrying out the terms of their employment. While it might be doubted whether the allegations of the complaint are sufficient as to those who have not entered upon their employment, there is no such doubt of the sufficiency of the complaint as to the other class.

I may add that, in my opinion, the situation does not call for a discussion of the rule applicable to instances of employment at will. It appears that the workmen herein

were employed for the season of 1917 and 1918. While the number of months of the season is not specified, I think we have a right to assume that it was for a longer period than one month, and that its exact duration was capable of ascertainment and proof. It is true that there was another agreement that the employees would not abandon their work until certain advancements had been restored to plaintiff and that they would give seven days' notice of their intention to quit, but this was not inconsistent with the terms of the contract requiring them to work during the season of 1917 and 1918.

Of course, there is no intention herein to question "the right of workingmen to organize a union of their craft for the purpose of improving the working conditions of the members of such organization, and to maintain such improved conditions by peaceful means," but we have to take the complaint as we find it, and it appears therein that defendants are violating the law, which is enacted for the protection of all classes; and whether the allegations can be proved or not, we must hold them sufficient to require an answer.

Hart, J., concurred.