# CHARLESTON

## THACKER COAL CO. v. BURKE.

Submitted February 16, 1903.   Decided March 6, 1906.

1. MASTER AND SERVANT—*Enticing Servant.*
    One who maliciously entices a servant in actual service of a master to desert and quit his service is liable to action therefor. (p. 254.)

2. SAME—*Liabilities.*
    If one wantonly and maliciously, whether for his own benefit or not, induces a person to violate his contract with a third person to the injury of that third person, it is actionable. (p. 254.)

3. SAME.
    Persons who conspire to induce others to break a valid contract between other persons are liable to action therefor. (p. 259.)

4. SAME.

> The act found in Code of 1899, section 14, appendix, p. 1053, does not authorize any individual, or number of individuals, to maliciously entice servants to desert service in which they are engaged, or to prevent them from engaging in such service under a contract for such service. (p. 262.)

Error to Circuit Court, Mingo County.

Action by the Thacker Coal & Coke Company against Charles Burke and others. From a judgment sustaining a demurrer to the declaration, plaintiff appeals.

*Reversed.*

RUCKER, ANDERSON & HUGHES and SHEPPARD & GOODYKOONTZ, for plaintiff in error.

J. H. GAINES, J. L. STAFFORD, and DOUGLASS W. BROWN, for defendants in error.

BRANNON, JUDGE:

The Thacker Coal and Coke Company filed a declaration in trespass on the case in the circuit court of Mingo county against Charles Burke and five others for damage for enticing servants from the plaintiff's service, which declaration upon demurrer was dismissed, and the company sued out a writ of error.

Certain legal principles control the case. In *Transportation Co.* v. *Oil Co.*, 50 W. Va. 611, we find it stated, on authority there given, that "If one wantonly and maliciously, whether for his own benefit or not, induces a person to violate his contract with a third person to the injury of that third person, it is actionable."

We find that holding confirmed in *Angle* v. *Chicago Railway*, 161 U. S. 1, in the language following: "If one maliciously interferes in a contract between two parties, and induces one of them to break that contract to the injury of the other, the party injured can sustain an action against the wrongdoer. When a man does an act which in law and fact is a wrongful act, and injury to another results from it as a natural and probable consequence, an action on the case will lie." If additional authority were needed for such a proposition of common sense and justice see the case decided by the highest English tribunal in 1901, *Quinn* v. *Leathem,*

App. Cases 1901, 495.    What I have already said refers to contracts in general.    As to the particular contract between master and servant the law is, if possible, yet more decided. The common law says that one who causes a breach of that contract is liable to damages.    It has been said by some that action in such case lies only by reason of the Act of Parliament in the reign of Edward III, A. D. 1350, making the act of enticement of a servant from his employer wrongful. If so, we might hesitate in saying that it is actionable in West Virginia; but I assert, believing that I am supported by ample authority, that action is given in such case by the common law.    So the text writers and courts treat it.    In Comyms' Digest, Title Action on the Case A, p. 278, the common law rule is thus stated: "In all cases where a man has a temporal loss, or damage by the wrong of another, he may have an action upon the case to be repaired in damages."    The Supreme Court of the United States, in *Angle* v. *Chicago Railway*, cited, stated the rule thus: "Wherever a man does an act which in law and in fact is a wrongful act, and such an act as may, as a natural and probable consequence of it, produce injury to another, and which in the particular case does produce an injury, an action on the case will lie."    It is generally treated as a common law cause of action.    The general principle applicable to contracts in general would give action against a third party for wrongfully causing the breach of contract between master and servant; but as to this particular contract the law has been long settled.    I cite the following authorities: "It is well settled that any person who, knowingly entices away the servant of another, and thereby induces him to violate his contract with his master, or who thereby deprives the master of the services of one then actually in his service, whether under a contract to serve or not, is liable to the master for his actual loss therefrom.    But in this action it is necessary to prove not only that the person employed was in the service of the plaintiff, but also that the defendant *knowing* the fact, wrongfully induced him to leave it.    The *intent* of the defendant, and the natural or actual effect of its execution, is the *gist* of the action, and, unless the declaration discloses that the act was done intentionally or willfully, and that it actually did, or was calculated to cause damage

to the plaintiff, and that it was done without right or justifiable cause, no recovery can be had. *Malice* is inferred from the wrongful character of the act, and the declaration or complaint must disclose such facts as support the inference. If a contract to serve is established, *actual service* under the contract need not be shown. *It is enough to show that the defendant, with notice of the servant's contract obligation to the plaintiff, has persuaded him not to enter into plaintiff's service under it.*" Wood Master and Servant, sections 230, 231. "The idea of interference with contract relations as to specific tort is of recent origin. The materials from which the generalization was worked out are found in several lines of precedents. From an early day it has been established that a master may maintain an action against one who entices away his servant or harbors and detains him with knowledge of his former contract." 16 Am. & Eng. Ency. L. (2d Ed.) 1109. "Certainly, since the statute of laborers, the common law has recognized the right of a master to recover for the actual damage he may have suffered by the wrongful interference by a third person with his relationship to his servant, by personal injury to the servant, or otherwise depriving the master, in whole or in part, of his service. * * * * Action for enticing servants from their employer, and for knowingly harboring servants who had previously left their employer, arose after the first statute of laborers. They survive its repeal, and occur in modern practice. Knowingly enticing from the service of another one who is employed under a contract not fully executed is an actionable wrong. Indeed, from this basis there has grown up a branch of law in which malice is an essential ingredient." Jaggard on Torts, section 155. "To the relation between *master* and *servant* and the rights accruing therefrom there are two species of injuries incident. The one is, retaining a man's hired servant before his time is expired; the other is, beating or confining him in such a manner that he is not able to perform his work. As to the first, the retaining another person's servant during the time he has agreed to serve his present master; this, as it is an ungentlemanlike, so it is also an illegal, act. For every master has by his contract purchased for a valuable consideration the service of his domestics for a limited time; the inveigling or hiring

his servant, which, induces a breach of this contract, is therefore an injury to the master; and for that injury the law has given him a remedy by a special action on the case; and he may also have an action against the servant for the non-performance of his agreement.    But, if the new master was not apprized of the former contract, no action lies against *him*, unless he refuses to restore the servant, upon demand." Blackstone, Book 2, 142.    I deem it useless to occupy space by quotation from other text books and decisions to prove the doctrine above stated.    They all lay down the law to the same effect.    2 Kinkead on Torts, section 457; 3 Page on Contracts, sections 1326, 1327; 11 Am. St. R., 378, 474; Schouler on Domestic Relations, section 487; 83 Am. St. R., 289; *Bowen* v. *Hall*, 6 L. R. Q. B. D. 333; *Walker* v. *Cronin*, 107. Mass. 555; *Quinn* v. *Leathem*, App. Cases 1901, 495; *Taff Vale Co.* v. *Amalgamated Society*, App. Cases, 1901, 426.    Hammon on Contracts, section 350, says: "The duty to respect the contractual tie so far as not to interfere with it rests upon all the world.    Thus, it is everywhere agreed that it is an actionable wrong to entice away a man's servant from his employment.    Independently of any right to sue the servant for breach of the contract of employment, the master may hold guilty the person liable in damages for thus wrongfully inducing the servant to sever the relation. Many courts, indeed, go further and lay down the broad principle that the man who unjustifiably induces one of two parties to a contract to break it, intending thereby to injure the other, or to obtain a benefit for himself, does that other a wrong, for which he must respond in damages."

The first count of the declaration alleges that the company is owner and operator of a coal mine, and was engaged on the 8th day of August, 1901, in the business of mining coal from the mine; that in order to carry on the business it was necessary for the plaintiff to employ, and it did employ, a large number of men to work in the mine, who were engaged in the company's service in working the mine and loading coal on railroad cars for shipment to parties with whom the plaintiff had contracts to furnish coal; that the defendants well knowing these facts, but contriving and wickedly and maliciously intending to injure the plaintiff in its business, unlawfully, wrongfully, maliciously, without justifiable cause,

without the consent and against the will of the plaintiff, molested, obstructed and hindered the plaintiff in its said business "by wilfully, wrongfully and maliciously persuading, inducing, enticing and procuring said·servants of the plaintiff, employed as aforesaid, to absent themselves and depart from the plaintiff's service;" that on pretext and by reason of such persuasion, enticement and procuration the said servants on the date aforesaid, without license and against the will and consent of the plaintiff, wrongfully absented themselves and departed from said service, and continued to do so; that the plaintiff was unable to employ other servants to work in its mine in the place of the servants so enticed away, and was thereby prevented from prosecuting and carrying on its business as extensively and profitably as it could and would have done, had not its servants been induced and enticed by the defendants to quit its service.

The first count does not, in words, state an express contract for service between employer and employee. By the language used in the books a contract must exist. This count says the miners were "*employed*" by the plaintiff and in actual service. Now, if the law gives action for enticement of a servant, it is not conceivable that a third person can maliciously entice away a lot of employes, simply because there was no contract fixing term of service. The relation of master and servant exists. In such case there is a contract recognized by law, an implied contract by which the employee can recover for his service. By entering such service the employee agrees, contracts to work. It is no difference that he can quit when he pleases. In *Walker* v. *Cronin*, 107 Mass. 555, was such a count and the court held it good. *Frank* v. *Herold*, 63 N. J. Eq. 443, meets this objection. It says: "To make out the relation of master and servant, it is not necessary that there be any written, or even verbal, contract between the parties to work for any particular length of time, but the relation exists where one person is willing to work for another from day to day, and that other desires the labor and makes his business arrangements accordingly. Employers, where third parties interfere with their employes against the latter's consent, and endeavor by unlawful means to induce them to quit work, have a right to sue for relief." In *Chipley* v. *Atkinson*, 28 Fla. 206, 11 Am. St. R. 367, it was

held that an action for procuring discharge of a servant could be maintained though no time of service was fixed. The court said that so long as the servant chose to continue another person could not interfere, and "neither the fact that the term of service interrupted is not for a fixed period nor the fact that there is not a right of action against the person who is induced or influenced to terminate the service, or who refuses to perform his agreement, is, of itself a bar of action against a third person maliciously and wantonly procuring the termination of or a refusal to perform the agreement." In *Vegelahn* v. *Guntner*, 167 Mass. 92, 57 Am. St. R. 443, it is held unlawful to conspire to prevent employes from continuing in service though there is no fixed period of service. This count is interpreted as alleging a subsisting contract between the company and its servants in process of execution. Even where there is a full right of competition, where one party does an act hurtful to another, even though it be maliciously done, we held it to be justified and not actionable, except where it produced the breach of a contract. But we said that if there was a contract between a competitor and his customers in trade, any action by a third person causing a breach of that contract, between its parties, was wrongful action, and subject to an action for damages, even though it was done for the benefit of the interfering party in the lawful competition of trade. We held that the advancement of the interest of the third party for self-preservation in trade would not justify his causing one of the parties to that contract to break it. *Transportation Co.* v. *Oil Co.*, 50 W. Va. 611. A party cannot have a justifiable cause to instigate, to move, the breach of a contract between master and servant. We repeat that the law says that where there is such a contract and a third party causes its violation, he is liable to an action. We do not have to say whether if the interference is without malice it is actionable, since the declaration avers a knowledge by the defendant of the existence of the contract, and avers that they maliciously and wrongfully caused its breach. We do not deny the principle that a man may do an act damaging another, even maliciously, when he has legal excuse or justification therefor; but we say that when his action, with knowledge on his part of a contract, causes, by intention, a breach of that contract, he is liable to damages

even though he acts for the promotion of his own interest. But in the present case the declaration avers that the defendants had no justification. It does not intimate that their action was moved by a purpose to benefit their own business, their own trade, their own interest in any shape. On the contrary it avers that their action was characterized by a wilful intent to injure the plaintiff without justifiable cause. If they had justifiable cause for their action the declaration does not speak it, and we are governed, on demurrer, by the declaration. Therefore, we hold that the first count of the declaration states a cause of action. We, however, say that it is defective in not specifying the servants who were enticed.

The second count alleges that the plaintiff to secure miners from other states made special written contracts with certain miners, to-wit: "William Linder and eight others, residents of North Carolina, whereby these miners agree to come to plaintiff and enter into service and engage in digging and shipping coal from its mine at a certain fixed rate per ton," specifying the rate, and that the company paid their fares of $11.50 each from North Carolina to the mine under contract with the miners that the fares were to be repaid the plaintiff out of the wages earned by the miners in mining for the plaintiff; that on the arrival near the mine the defendants, knowing of such contract, wrongfully, maliciously and with unlawful purpose to injure the business of the plaintiff and against the consent of the plaintiff, induced and enticed said miners to break their several contracts of service and refuse to enter the service of the plaintiff according to the written contract, and persuaded and induced and enticed them to depart, and that by reason of said persuasion and enticement said miners, engaged under said written contract, wholly failed and refused to perform their contracts and enter the service of the plaintiff, and immediately departed from the place where they were employed to work without having entered the service of the plaintiff and without having paid the plaintiff the money advanced for said railroad fare, and that none of the miners have returned to work in the said mine. Under the principles stated above this count shows a good cause of action.

A third count alleges that the plaintiff being such operator of a coal mine made a written contract with Samuel Bowean where-

by Bowean contracted to mine for the plaintiff five hundred tons of coal, and Boween had entered upon the performance of the contract, and that the defendants knowing of such contract, unlawfully, wrongfully, maliciously and with unlawful purpose to injure the business of the plaintiff, induced and enticed Bowean to break and disregard the contract, and that Bowean, by reason of such enticement, broke and refused to execute the contract. Under principles above stated this count shows a good cause of action.

A fourth count says that the plaintiff, being owner and operator of such coal mine, made special written contracts with Alvin Hunter and other persons named, whereby each one of them obligated himself to mine for the plaintiff a certain fixed amount of coal at a specified rate per ton; that said Hunter and others had actually started upon the performance of their contracts, that the defendants well knowing thereof, contriving and falsely and maliciously intending to injure, vex, harass, oppress, impoverish and wholly ruin the plaintiff in its business, unlawfully and maliciously did agree, confederate, combine and form themselves into a conspiracy to persuade, entice and procure Hunter and others named to violate, break and wholly disregard their contracts with the plaintiff; that the defendants having so conspired and confederated under the name of the "United Mine Workers of America," contriving and intending as aforesaid, in pursuance and execution of their conspiracy, on a day named, unlawfully, wantonly, wrongfully and maliciously, without justifiable cause, and against the will of the plaintiff, molested, obstructed and hindered the plaintiff in its business of mining and shipping coal by wilfully, wantonly, wrongfully and maliciously persuading, enticing and procuring Hunter and the others named to break, violate and disregard their contracts, and that on pretext and because of such persuasion, Hunter and others, against the will, and without the consent of the plaintiff, without cause, violated their contracts by refusing to continue their work of mining coal as required by their contracts, and have not performed their contracts. Under principles above stated this Count shows a good cause of action. *Employing Club* v. *Doctor Blosser Co.*, 50 S. E. 353.

The defendants rely on Code of 1899, p. 1053, section 14,

reading as follows: "Nor shall any person or persons or combination of persons by force, threats, menace or intimidation of any kind, prevent or attempt to prevent from working in or about any mine, any person or persons who have the lawful right to work in or about the same, and who desire so to work; but this provision shall not be so construed as to prevent any two or more persons from associating themselves together under the name of Knights of Labor, or any other name they may desire, for any lawful purpose, or from using moral suasion or lawful argument, to induce any one not to work on and about any mine." This statute is a penal, criminal statute; for it makes the acts in it specified unlawful, and by section 17 imposes a punishment. This is a criminal act. It does not pretend to create rights between individuals. It prohibits certain acts, and the proviso simply curtails the scope of the enactment by saying that the, enacting clause shall not be construed to impair any right, already existing, if existing, to join the organization therein specified or use moral suasion. It is only a curb upon the enactment. It does not affirmatively grant, create or originate those rights. It does not make them lawful, if before unlawful. And could the Legislature authorize any person to violate a contract?

We, therefore, reverse the judgment, overrule the demurrer, except as to the first count, and remand the case to the circuit court for further proceedings, with leave to amend the first count of the declaration.

*Reversed.*