446 S.E.2d 672

**Albert Coerte VOORHEES, Plaintiff–Appellee,**

v.

**GUYAN MACHINERY COMPANY, a West Virginia corporation and Robert Shell, Jr., Defendants–Appellants.**

**No. 21693.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 19, 1994.

Decided March 24, 1994.

**452**

Charles E. Hurt, Hurt & Barone, Charleston, for plaintiff-appellee.

Fred F. Holroyd, Holroyd & Yost, Charleston, for defendant-appellant Guyan Machinery Company.

P. Rodney Jackson, Ditrapano & Jackson, Charleston, for defendant-appellant Robert Shell, Jr.

NEELY, Justice:

Albert Coerte Voorhees was hired by Guyan Machinery Company ("Guyan Machinery") as an outside salesman on 1 July 1981. On 9 December 1985, Mr. Voorhees was required to sign a non-competition agreement wherein Mr. Voorhees agreed that if he should leave Guyan Machinery, he would not compete with Guyan Machinery for a period of 24 months from the date of termination of his employment within a 250–mile radius of the State of West Virginia.

On 11 July 1991, Mr. Voorhees resigned from Guyan Machinery and shortly after began working for Polydeck Screen Corporation ("Polydeck"), a competitor of Guyan Machinery. On 7 August 1991, Robert Shell, Jr., chairman of the board of directors of Guyan Machinery, alerted Polydeck to the existence of the non-competition agreement between Guyan Machinery and Mr. Voorhees and threatened that "he would go to the highest court of the land to enforce it."[1] Deiter Egler, executive vice president of Polydeck, thereupon informed Mr. Voorhees that if he failed to renegotiate the restrictions on the non-competition agreement with Guyan Machinery, Polydeck would be forced to fire him. Notwithstanding efforts, however, no agreement was reached between Mr. Voorhees and Guyan Machinery and on 14 August 1991, Polydeck fired Mr. Voorhees.

On 2 October 1991, Mr. Voorhees filed an action in the Circuit Court of Logan County, alleging that Guyan's actions in threatening a lawsuit and in refusing to permit Mr. Voorhees to work for Polydeck in the areas covered by the noncompetition agreement tortiously interfered with his contract of employment with Polydeck. By letter dated 30 October 1991, Guyan Machinery extended an offer to Mr. Voorhees to report to work as a salesman at Guyan Machinery's Chapmanville, West Virginia office on 4 November 1991. Mr. Voorhees refused the offer, dismissing it as a sham designed to induce Mr. Voorhees to drop the lawsuit.

On 12 June 1992, the circuit court denied Guyan Machinery's motion in limine based on Mr. Voorhees' failure to mitigate damages in

---

1. Evidentiary deposition of Dieter Egler, executive vice president of Polydeck, p. 13.

failing to accept a comparable position offered to Mr. Voorhees by Guyan Machinery.

On the basis of interrogatories propounded to the jury on 24 July 1992, the court found that: (1) the noncompetition agreement was invalid and Guyan Machinery knew or should have known it was invalid; (2) Guyan Machinery had tortiously and intentionally interfered with Mr. Voorhees' contract of employment with Polydeck; and (3) because Mr. Shell acted in the reasonable belief that he was protecting a legitimate business interest in alerting Polydeck to the existence of the noncompetition agreement, he should be dismissed from the suit. On the same day, the jury returned a verdict against Guyan Machinery, awarding Mr. Voorhees compensatory damages in the amount of $75,000, punitive damages in the amount of $75,000 and prejudgment interest on the compensatory damages computed from 14 August 1991, the day on which Mr. Voorhees was fired by Polydeck, in the amount of $7,065.76.

After the circuit court denied Guyan Machinery's motion for a directed verdict in their favor based upon a valid and enforceable noncompetition agreement entered into by the parties as well as its motion to set aside the jury verdict as contrary to the law and evidence, Guyan Machinery appealed to this Court assigning the following errors: Mr. Voorhees failed to prove that Guyan Machinery intentionally interfered with an employment relationship without justification or excuse; neither compensatory nor punitive damages were justified; and Mr. Voorhees' failure to meet his duty to mitigate damages by accepting an offer of reemployment from Guyan Machinery was improperly disregarded by the circuit court.

## I.

In *Thacker Coal & Coke Co. v. Burke*, 59 W.Va. 253, 254, 53 S.E. 161, 162 (1906), we held that "[i]f one wantonly and maliciously, whether for his own benefit or not, induces a person to violate his contract with a third person to the injury of that third person, it is actionable."

In Syllabus Point 2 of *Torbett v. Wheeling Dollar Sav. & Trust Co.*, 173 W.Va. 210, 314 S.E.2d 166 (1983), we discussed the requirements of a prima facie case of tortious interference in an employment relationship and the factors that might show the interference was proper:

> To establish prima facie proof of tortious interference, a plaintiff must show:
>
> (1) existence of a contractual or business relationship or expectancy;
>
> (2) an intentional act of interference by a party outside that relationship or expectancy;
>
> (3) proof that the interference caused the harm sustained; and
>
> (4) damages.
>
> If a plaintiff makes a prima facie case, a defendant may prove justification or privilege, affirmative defenses. Defendants are not liable for interference that is negligent rather than intentional, or if they show defenses or legitimate competition between plaintiff and themselves, their financial interest in the induced party's business, their responsibility for another's welfare, their intention to influence another's business policies in which they have an interest, their giving of honest, truthful requested advice, or other factors that show the interference was proper.

On appeal, Guyan Machinery maintains that although Mr. Voorhees established prima facie proof of tortious interference, Mr. Voorhees failed to rebut Guyan Machinery's affirmative defenses offered for its interference. According to Guyan Machinery, the justifications it offered at trial in response to Mr. Voorhees' claim of tortious interference of business relationship—that Mr. Voorhees had signed a valid noncompetition agreement during his employment with Guyan Machinery; that Mr. Voorhees and Guyan Machinery were engaged in competing businesses; and, that Guyan Machinery's attempt to enforce the noncompetition agreement was for the sole purpose of protecting its legitimate business interest—rendered its interference proper.

These contentions notwithstanding, the jury determined that the noncompetition agreement was invalid and that Guyan Machinery's actions were an intentional act of interference. In Syllabus Point 2, *Perry v.*

*Melton,* 171 W.Va. 397, 299 S.E.2d 8 (1982), we noted the standard for reviewing a jury verdict:

> In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true. Syllabus Point 3, *Walker v. Monongahela Power Company,* 147 W.Va. 825, 131 S.E.2d 736 (1963). Syllabus Point 4, *Long v. City of Weirton,* 158 W.Va. 741, 214 S.E.2d 832 (1975).

■ We find that the justifications offered by Guyan Machinery in response to Mr. Voorhees' claim of tortious interference with his business relationship with Polydeck were insufficient to reverse the jury's finding that Guyan Machinery's actions did in fact constitute tortious interference. The evidence at trial showed that any "competition" between Guyan Machinery and Polydeck was so insignificant as to render Guyan Machinery's claim that it was protecting its business interests by enforcing the noncompetition agreement with Mr. Voorhees absurd. According to John E. Sterling, a Guyan Machinery product sales manager, the only product manufactured by Polydeck is urethane screens, while the urethane screens represent less than one half of one percent of Guyan Machinery's total sales. Because there was no legitimate competition between Guyan Machinery and Polydeck, there was no legitimate business interest to be protected by enforcing the noncompetition agreement. In short, there was no error in the finding that Guyan Machinery improperly interfered with Mr. Voorhees' business relationship with Polydeck.

■ Likewise, we find no error in the court's refusal to grant Guyan Machinery's motion to set aside the jury verdict on the ground that Mr. Voorhees' cause of action for tortious interference was invalid. A motion for judgment notwithstanding the verdict may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. When, as here, there is conflicting credible evidence, or insufficient evidence to establish conclusively the movant's case, judgment notwithstanding the verdict is inappropriate. *McClung v. Marion County Commission,* 178 W.Va. 444, 360 S.E.2d 221 (1987). Given the overwhelming weight of evidence supporting Mr. Voorhees' claim of intentional interference with his business relationship with Polydeck, we find no error in the trial court's failure to grant a judgment notwithstanding the verdict.

## II.

Guyan Machinery next contends that the jury verdict finding Guyan Machinery liable for compensatory and punitive damages was erroneous when the jury also found that Robert Shell, Jr., acted to protect the legitimate business interests of Guyan in alerting Polydeck to the existence of the noncompetition agreement. Specifically, Guyan Machinery's theory is that because Mr. Shell, as chairman of Guyan Machinery, was the sole actor in Guyan Machinery's attempt to enforce its noncompetition agreement with Mr. Voorhees, it is logically inconsistent for the jury to impose compensatory and punitive damages on Guyan Machinery whilst finding Mr. Shell was acting for a legitimate business purpose. We disagree.

■ Contrary to Guyan Machinery's contentions, the crux of Guyan Machinery's liability did not arise from Mr. Shell's actions, but from the unenforceable nature of the noncompetition agreement between Guyan Machinery and Mr. Voorhees. As this Court stated in the syllabus in *O. Hommel Co. v. Fink,* 115 W.Va. 686, 177 S.E. 619 (1934):

> A contractual covenant between employer and employee, restricting the employee from engaging in business similar to that of the employer within a designated time and territory after the employment should cease, will be enforced if the restriction is reasonably necessary for the protection of the employer and does not impose undue hardship on the employee.

■ Our more recent cases recognize that to obtain enforcement of a noncompetition agreement in an employment agreement, the

employer must demonstrate that he has an interest that must be protected from unfair appropriation by former. employees. *Reddy v. Community Health Found. of Man,* 171 W.Va. 368, 298 S.E.2d 906 (1982); *Helms Boys, Inc. v. Brady,* 171 W.Va. 66, 297 S.E.2d 840 (1982). The most commonly asserted protectible employee interests are: (1) the employer's direct investment in skills the employee acquired in the course of employment;[2] and (2) confidential or unique information, such as trade secrets or customer lists. *Reddy v. Community Health Found. of Man,* 171 W.Va. 368, 298 S.E.2d at 912.

▇▇▇ In the case before us, Guyan Machinery did not meet its burden of demonstrating a legitimate business interest warranting the protection of the restrictive covenant. The evidence showed that Mr. Voorhees was a salesman whose job consisted of visiting preparation plants and mine sites trying to sell coal-related equipment and services. The evidence did not show that Guyan Machinery provided Mr. Voorhees with any unique or specialized training in the course of his employment. We have stated in the Syllabus of *Helms Boys, Inc. v. Brady, supra:*

> When the skills and information acquired by a former employee are of a general managerial nature, such as supervisory, merchandising, purchasing and advertising skills and information, a restrictive covenant in an employment contract will not be enforced because such skills and information are not protectible employer interests.

*See also* syllabus pt. 2, *Moore Business Forms, Inc. v. Foppiano,* 181 W.Va. 305, 382 S.E.2d 499 (1989).

Nor did Guyan Machinery produce any evidence showing that Mr. Voorhees' access to "confidential information," such as knowledge of product prices, customer lists, customer reorder lists, customer reorder cycles, customer inventory rooms, and company profit margins, constituted a protectible employer interest. Not only were there no secret customer lists; the names of Guyan Machinery customers were available in a state publication. In such circumstances, any information to which Mr. Voorhees was privy as a result of his position at Guyan Machinery was not subject to protection by the restrictive covenant. *See Appalachian Laboratories, Inc. v. Bostic,* 178 W.Va. 386, 359 S.E.2d 614 (1987). We cannot say, then, that the evidence demonstrates a protectible employer interest.

In summary, we conclude that Mr. Shell's belief that the noncompetition agreement was valid is irrelevant to the issue of Guyan Machinery's liability and presents no logical inconsistency in the jury's findings. The jury obviously concluded that Mr. Shell was legitimately ignorant of the law that applies to the enforcement of noncompetition agreements and that he acted in good faith. At the same time, however, the jury also must have concluded that the *corporation,* Guyan Machinery, had an obligation to place matters of this sort in the hands of competent lawyers and that the corporation's entrustment of matters of this type to a layman constituted such willful and wanton negligence as to amount to reckless and willful disregard of the rights of others—in other words, the act was intentional on the part of the corporation. Although we might have reached other conclusions, we cannot say that the jury was clearly wrong or decided the case contrary to the law and the evidence.

### III.

Guyan Machinery next challenges the award of punitive damages, claiming that punitive damages cannot be recovered absent proof of malice, wantonness or oppression. According to Guyan Machinery, Guyan Machinery's offer to Mr. Voorhees of another job when he was discharged from Polydeck negates any claim of malicious, wanton or oppressive conduct on the part of Guyan Machinery and renders the jury's award of punitive damages erroneous. We disagree.

---

**2.** A good example of direct employer investment would be the sending of an employee to a school for ninety days to learn to be a mechanic. The employer is entitled to draft a reasonable contract that will allow him to recover this investment, particularly as employee training is in the public interest.

In *Harless v. First National Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982), we stated:

> "Punitive or exemplary damages are such as, in a proper case, a jury may allow against the defendant by way of punishment for wilfulness, wantonness, malice, or other like aggravation of his wrong to the plaintiff, over and above full compensation for all injuries directly or indirectly resulting from such wrong." Syllabus Point 1, *O'Brien v. Snodgrass,* 123 W.Va. 483, 16 S.E.2d 621 (1941).

When an intentional interference with an employment relationship is alleged, the jury can properly consider the issue of punitive damages. *C.W. Development v. Structures, Inc.,* 185 W.Va. 462, 408 S.E.2d 41 (1991). When a servant is enticed to desert service by another, "[m]alice is inferred from the wrongful character of the act, and the declaration or complaint must disclose such facts as support the inference." *Thacker Coal & Coke Co. v. Burke,* 59 W.Va. 253, 53 S.E. 161 (1906).

The evidence incontrovertibly demonstrates that Guyan Machinery intentionally called Polydeck and threatened to involve Mr. Voorhees' employer in a law suit, to "take it to the highest court in the land" if the terms of the purportedly enforceable noncompetition agreement were violated. The evidence also shows that the effect of the threat was in fact to cause Mr. Voorhees to lose his job with Polydeck, notwithstanding the unenforceable nature of the noncompetition agreement. Thus, pursuant to our holding in *Thacker, supra,* malice is inferred from the wrongful character of Guyan Machinery's threat. Because Mr. Voorhees alleged intentional interference with his employment relationship with Polydeck, the jury properly considered the issue of punitive damages. We find no error in the jury verdict finding Guyan Machinery liable for punitive damages.

## IV.

Guyan Machinery also contends that the circuit court erred in refusing its motion in limine, motion for directed verdict, motion to set aside the verdict and for judgment notwithstanding the verdict as well as its proposed jury instruction number 12, all of which relate to Mr. Voorhees' failure to mitigate damages by refusing to accept Guyan Machinery's 30 October 1991 offer of reemployment. Specifically, the trial court refused to give the following proposed jury instruction:

> The plaintiff in this case has a duty to mitigate any damages that may have resulted from the alleged tortious interference with his business relationship. On October 30, 1991, Guyan Machinery Company offered the plaintiff a sales position. This offer of employment made by the defendants to the plaintiff was rejected on November 1, 1991. Therefore, the plaintiff has failed to satisfy his duty to mitigate damages as of November 1, 1991 by rejecting the offer of employment. Thus, the plaintiff is barred from being awarded any damages subsequent to November 1, 1991.

According to Guyan Machinery, West Virginia law has long recognized an injured party's duty to mitigate damages. The cases cited and relied upon by Guyan Machinery on appeal stand for two propositions: first, that an employee who seeks damages for loss of income in a wrongful discharge case has a duty to exercise reasonable diligence to minimize his damages; *see Davis v. Laurel River Lumber Co.,* 85 W.Va. 191, 101 S.E. 447 (1919); *Martin v. Bd. of Ed. of Lincoln County,* 120 W.Va. 621, 199 S.E. 887 (1939); *Harless v. First Nat'l Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982);[3] and secondly, that the defense of mitigation of damages is an affirmative defense, the burden of which lies entirely upon the party asserting it. *Mason County Bd. of Ed. v. State Sup't,* 170 W.Va. 632, 295 S.E.2d 719 (1982). Nowhere in the cases cited, however, is there any comment concerning an

---

**3.** The evidence presented below demonstrates that Mr. Voorhees exercised reasonable diligence in attempting to minimize his damages, contacting at least 22 employers in the mining industries, sending out resumes and incurring expenses of $695.40 in seeking employment, which were included as part of his damages. Guyan Industries, for its part, failed to meet its burden of proving that Mr. Voorhees did not adequately mitigate damages.

employee's duty to accept reemployment offered in mitigation of damages in an action claiming tortious interference with a business relationship. Indeed, nowhere in West Virginia law does there exist such a proposition.

■ Contrary to Guyan Machinery's contentions, then, the mitigation of damages principle involved in wrongful discharge cases is not applicable to cases involving an allegation of tortious interference with the contract of employment with another employer. Even were such a principle applicable in West Virginia, it is well-settled that an offer of reemployment will mitigate damages only if the offer is made without prejudice to the employee's rights under the original contract. Thus, an offer by an employer to take his employee back in a position of a substantially lower grade and character from that from which he was discharged cannot be used to mitigate damages. *See Hussey v. Holloway*, 217 Mass. 100, 104 N.E. 471 (1914); 22 Am. Jur.2d, Damages § 72 (1965); Annot. 44 A.L.R.3d 629, 636 (1972). Likewise, an offer of reemployment by an employer will not diminish the employee's recovery if the offer is not accepted if circumstances are such as to render further association between the parties offensive or degrading to the employee. *Teich v. Aetna Indus. Corp.*, 8 N.Y.2d 766, 201 N.Y.S.2d 780, 168 N.E.2d 114 (1960); *Steranko v. Inforex*, 5 Mass.App. 253, 362 N.E.2d 222 (1977).

In the case before us, it is less than difficult to infer that Mr. Voorhees' refusal to accept Guyan Machinery's offer of reemployment does not constitute a failure to mitigate damages. Guyan Machinery offered to employ Mr. Voorhees after causing him to lose his job with Polydeck and after Mr. Voorhees had sued Guyan Machinery. For Mr. Voorhees to return to work at Guyan Machinery in such circumstances would be tantamount to expecting that Sulla and Gaius Marius might form a productive working relationship after Sulla's march on Rome. The circuit court made no error either in finding that Mr. Voorhees had no duty to mitigate damages by accepting Guyan Machinery's offer of reemployment or in refusing to grant Guyan Machinery's motion to set aside verdict on the ground that Mr. Voorhees had failed to meet his duty of mitigating damages. *See McClung, supra.*

Accordingly, for the foregoing reasons, the judgment of the circuit court of Logan County is affirmed.

Affirmed.

WORKMAN, Justice, dissenting:

I respectfully dissent from the majority's opinion insofar as it upholds the punitive damages award, and undermines the law concerning mitigation of damages. First, I find no basis for the jury's punitive damages award against Guyan Machinery Co. (hereinafter referred to as Guyan). Mr. Voorhees' complaint predicated Guyan's liability on the acts of Robert Shell, chairman of the board of directors of Guyan, as follows:

> Upon learning that the plaintiff had obtained said employment, the defendant, Robert Shell, Jr., as an officer and director of the defendant corporation, Guyan Machinery Company, Inc., and in the course of his employment of said corporation, called officials of the said Polydeck Screen Corporation and threatened to involve them in a lawsuit if they continued their employment of the plaintiff. As a direct and approximate result thereof, the plaintiff's employment was terminated.

By special interrogatories, however, the jury found that Robert Shell, the only defendant actor in this case, was not acting maliciously when he informed Polydeck Screen Corporation (hereinafter referred to as Polydeck) of the noncompetition agreement Guyan had with Mr. Voorhees, but rather was acting "for the purpose of protecting the legitimate business interest of Guyan...." Even though Mr. Voorhees based his claim against Guyan on the actions of Mr. Shell, the jury assessed punitive damages against Guyan, for the same act on which it exonerated Mr. Shell. These two findings by the jury, which were upheld by the majority, are not only contrary, but illogical as well.

The majority upholds these two contrary jury findings by stating that

> The jury obviously concluded that Mr. Shell was legitimately ignorant of the law that applies to the enforcement of noncom-

petition agreements and that he acted in good faith. At the same time, however, the jury also must have concluded that the *corporation*, Guyan Machinery, had an obligation to place matters of this sort in the hands of competent lawyers and that the corporation's entrustment of matters of this type to a layman constituted such willful and wanton negligence as to amount to reckless and willful disregard of the rights of others—in other words, the act was intentional on the part of the corporation.

The majority's reasoning that the jury must have concluded that Guyan "had an obligation to place matters of this sort in the hands of competent lawyers and that the corporation's entrustment of matters of this type to a layman" is what justified the punitive damage award is not only speculative, but also absurd! A corporation has no voice, action or intent, except that which is imputed to it from the words, deeds and thoughts of its agents. Thus, "[a] corporation can only act through its employees and, consequently, the acts of its employees, within the scope of their employment, constitute the acts of the corporation." *United States v. T.I.M.E.–D.C., Inc.,* 381 F.Supp. 730, 738 (W.D.Va. 1974). Accordingly, when Mr. Shell called Polydeck, he was speaking not only for himself, but for the corporation. Consequently, if Mr. Shell's actions were not malicious, than neither were the corporation's, and punitive damages were improperly awarded.

Moreover, the pronouncement by the majority that a corporation's failure to place these types of matters in the hands of competent lawyers constitutes a per se intentional act on the part of the corporation warranting a punitive damage award is reprehensible and flies in the face of the law of this state. *See Mace v. Charleston Area Medical Cntr. Found.,* 188 W.Va. 57, 67, 422 S.E.2d 624, 634 (1992) ("The right to punitive damages is incumbent upon proof of further evidence of egregious conduct by the employer.") (citing *Harless v. First Nat'l Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982)). The majority's pronouncement essentially eliminates the need to prove any evidence of egregious conduct by the corporation. According to the majority, no corporate official can even make a telephone call or write a letter if a potential dispute exists unless he calls a lawyer first. The majority opinion should be entitled the lawyers full employment case. To say that Guyan is subject to punitive damages because they didn't immediately turn this over to a lawyer instead of making a call that even the jury found to be in the legitimate business interest of the company is immensely unfair to corporate entities.

I also disagree with the breadth of the new law enunciated by the majority in syllabus point four, which provides: "If *anything* has occurred to render further association between the parties offensive or degrading to the employee, an offer of further employment by the employer will not diminish the employee's recovery if the offer is not accepted." (Emphasis added). As written, this syllabus point threatens to undermine the well-established mitigation of damages principle. The term "anything" is overbroad and should be more narrowly stated to focus only on conduct in the realm of the law establishing tortious interference. Further, the determination of what is considered offensive or degrading to an employee should be governed by a reasonableness standard.

Based on the foregoing, I dissent.