David J. RICE, Plaintiff,

v.

**COMMUNITY HEALTH ASSOCI-
ATION d/b/a Jackson General
Hospital, Defendant.**

No. Civ.A. 6:97–1169.

United States District Court,
S.D. West Virginia,
Parkersburg Division.

March 8, 1999.

Mark A. Atkinson & Susanne M. Coffield, Rose & Atkinson, Charleston, WV, for plaintiff.

Fred F. Holroyd and Tom Price, Holroyd, Yost & Evans, Charleston, WV, for defendant.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are Defendant's motions for (1) judgment as a matter of law and, (2) in the alternative, for a new trial, and (3) Plaintiff's motion to amend the judgment order to incorporate appropriate prejudgment interest. As discussed more fully below, Defendant's motions are **DENIED** and Plaintiff's motion is **DENIED.**

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Dr. Rice was an emergency room physician, employed by Defendant Jackson General Hospital ("hospital") under a five-year contract, which extended from July 1, 1996 to July 1, 2001. The contract provided for for-cause termination; it also incorporated by reference the medical staff Bylaws of the hospital. *See Rice v. Community Health Assoc.,* 6:97–1169, slip op. (S.D.W.Va. Dec. 17, 1998) ("Dec. 17 Order").

On September 23, 1997 Richard Rohaley ("Rohaley"), president and CEO of the hospital, suspended Rice, following a report that a nurse had been hit by a cart pushed by the doctor. Rohaley testified he instituted an investigation. On September 29, 1996 Rohaley presented Rice with a memo written by counsel for the hospital, dated *September 23, 1997,* which said:

Please consider this notice of your termination effective immediately [sic] the reason for this termination has been discussed with you and generally involves the following:

1) Mistreatment of hospital employees especially female employees which mistreatment constitutes sexual harassment which results in the creations [sic] of a hostile work environment.

2) Violation of Federal laws providing for the prohibition of refusing to treat a patient in the emergency room.

3) Other acts and omissions in violation of employment agreement and the employee handbook.

Enclosed is your pay through today and pro-rated vacation pay.

This wrongful termination case was tried before a jury on December 15 to 17, 1998. The jury returned a verdict in favor of Plaintiff and awarded him $751,564 for breach of contract and $1,418,829 for future consequential damages. During the trial Defendant made no motion for judgment as a matter of law.

## II. DISCUSSION

### A. Judgment as a Matter of Law

■ *Rule* 50 provides for judgment as a matter of law in jury trials. Fed.R.Civ.P. 50. *Rule* 50(a) governs motions for judgment as a matter of law made during trial. Such motions, when brought after the trial of a matter, are governed by *Rule* 50(b):

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. *The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment* —and may alternatively request a new trial or join a motion for a new trial under Rule 59.

Fed.R.Civ.P. 50(b) (emphasis added).

■ A party is required to raise the reason for which it is entitled to judgment as a matter of law in its *Rule* 50(a) motion before the case is submitted to the jury and to reassert that reason in its *Rule* 50(b) motion after trial if the *Rule* 50(a) motion proves unsuccessful. *Price v. City of Charlotte, North Carolina,* 93 F.3d 1241, 1248 (4th Cir.1996) (citing *Singer v. Dun-*

*gan,* 45 F.3d 823, 828–29 (4th Cir.1995)). A *Rule* 50(a) motion is a prerequisite to a *Rule* 50(b) motion because the moving party must apprise the Court of the alleged insufficiency of the non-movant's suit before the case is submitted to the jury. *Id.* (citing *Tights, Inc. v. Acme–McCrary Corp.,* 541 F.2d 1047, 1058 (4th Cir.), *cert. denied,* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976)). The explicit language of *Rule* 50(b) reinforces this view: a motion for judgment as a matter of law made after trial is the *renewal* of the request made at the close of all the evidence.

Here, no motion for judgment as a matter of law was made by Defendant at any time during the trial of this matter. In particular, such motion was not made at the close of all the evidence. Accordingly, the Court **DENIES** Defendant's motion for judgment as a matter of law because it was made untimely, and it fails to comport with the requirements of *Rule* 50(b).

### B. Alternative Motion for a New Trial

*Rule* 59(a) provides that "[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States[.]" Fed.R.Civ.P. 59(a).

■ *Rule* 59 standards are well established in this circuit: "[o]n such a motion it is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Atlas Food Sys. and Servs., Inc. v. Crane Nat'l Vendors, Inc.,* 99 F.3d 587 (4th Cir.1996) (citing *Aetna Cas. & Sur. Co. v. Yeatts,* 122 F.2d 350 (4th Cir.1941) (numerals added)).

Defendant enumerates thirteen grounds in support of its motion for a new trial. While the first two state separate grounds, items three through thirteen address a variety of issues surrounding the award of consequential damages in this breach of contract action, some of them repetitive, overlapping, or intermingled.[1] In the discussion that follows, the Court identifies, when necessary, which particular ground(s) it is discussing.

Initially, the Court must inquire and determine which grounds have been preserved by objection for review. Our Court of Appeals has held that "[a] motion for a new trial should not be granted ... where the moving party has failed to timely object to the alleged impropriety giving rise to the motion." *Dennis v. General Elec. Corp.*, 762 F.2d 365, 367 (4th Cir. 1985). Defendant objected to the Court's exclusion of the Employment Manual and inclusion of the Bylaws in Rice's contract.[2] Tr. at III 50–51. Although this constitutes the only objection relevant to Defendant's motion for a new trial offered during trial, Defendant also points to its motion in li-

mine to exclude evidence of Plaintiff's income potential past July 1, 2001. Defendant also moved in limine to exclude any evidence of malice in Plaintiff's discharge. Defendant correctly observes, "motions in limine will preserve issues that they raise without any need for renewed objections at trial, just so long as the movant has clearly identified the ruling sought and the trial court has ruled upon it." *United States v. Wilson*, 118 F.3d 228, 238 (4th Cir.1997).

To determine which of the thirteen offered grounds these objections preserve, one must examine each of Defendant's grounds in turn. Accordingly, the Court will consider each ground for the motion in order, first examining whether it has been preserved for review and second, whether it meets the standard for the grant of a new trial.

### 1. Exclusion of the Employment Manual; inclusion of Bylaws' procedural due process

Defendant argues, first, the Court should have found the hospital Em-

---

1. Defendant's enumerated grounds in support of its motion are: (1) The Court erred when it excluded the Employment Manual from the contract and instructed the jury that there had been a breach of procedural due process contained in the Bylaws; (2) The Court erred when it excluded evidence obtained during the suspension of Plaintiff; (3) The Court erred in submitting the issue of consequential damages to the jury in the absence of any evidence that such damages were contemplated by both Plaintiff and Defendant at the time they made the contract; (4) The damage award for future consequential damages was not proven with reasonable certainty, but was speculative; (5) The Court erred in permitting evidence of Plaintiff's diminished earning capacity beyond July 1, 2001; (6) The Court erred by submitting the issue of consequential damages to the jury based upon damage to the Plaintiff's reputation; (7) The Court erred by allowing Plaintiff to present evidence of consequential damages after the hospital's offer of reinstatement, and remittitur of front pay is appropriate; (8) The Court erred when it allowed the Plaintiff to recover tort damages; (9) The award of future consequential damages based upon Defendant's malicious conduct in terminating plaintiff is punitive

and not available in a breach of contract; (10) The Court erred by submitting the issue of consequential damages arising from a breach of contract for a definite term; (11) The evidence did not support the Court's instruction to the jury on the issue of malice as it related to mitigation and front pay and such instruction was prejudicial; (12) The jury was improperly permitted to consider evidence of malice in assessing the front-pay damage award; and (13) The damage award based upon future consequential damages is punitive and violates Defendant's constitutional due process rights.

2. Defendant also objected to the testimony of Dr. Cobb, an economist who testified to diminution of Rice's future income; however, this objection was to lack of foundation. Defendant had agreed to Cobb being offered out of order because Plaintiff's witnesses who would testify as to future lost employment opportunities were not available until the following morning. After Defendant's objection to lack of foundation if Cobb were taken out of order, the Court did not hear Cobb that day, but recessed until the next morning. Tr. at I 175–77.

ployment Manual was part of Rice's contract.[3] Defendant wished to rely as a defense on the provisions in that manual which allegedly allow the hospital to discharge employees for sexual harassment and assault. Second, Defendant argues the provisions for procedural due process found in the Bylaws constituted no part of Rice's contract. The Court finds that these grounds were preserved by Defendant's objection during trial addressed directly to this issue. The Court, as part of its duty in conducting the trial, analyzed Rice's employment contract. Having thoroughly discussed these issues in the December 17 Order, the Court relies on its prior analysis in the order to hold that these grounds for the motion are without merit and do not support this motion for a new trial.[4]

However, the Court does note that, after having heard all the evidence, it held as a matter of law that no evidence of sexual harassment or of assault was presented to sustain these claims. With regard to sexual harassment, the Court found that simply creating "a hostile work environment," as Defendant argued, was not legally sufficient. Sexual harassment requires that the actions creating that hostile environment be based on sex, and the Court had heard not a "whit" of such evidence. Tr. at II 197. Concerning assault, the victim herself testified that the incident where she was hit by a cart was not intentional. Tr. at II 163. The Court ruled that assault, by law, requires intent, and no evidence of intent was presented. Tr. at II

197. Defendant does not challenge these rulings. Therefore, even if the Employment Manual were part of the doctor's contract, it would have provided no basis for his termination and its exclusion could be no more than harmless error.

Accordingly, the Court **DENIES** Defendant's motion for a new trial on the grounds of exclusion of the Employment Manual and inclusion of the Bylaws' procedural due process.

## 2. Exclusion of evidence obtained during Plaintiff's suspension

■ Plaintiff moved in limine to exclude evidence acquired by the hospital after Dr. Rice's termination. Defendant made no motion in limine nor objection at trial going to preservation of this issue for review. Nevertheless, the Court addresses the issue to clarify certain confusions and mischaracterizations which the framing of, and argument on, this ground for Defendant's motion present.

On September 29, 1997 Dr. Rice was given a memo dated September 23, 1997, detailing the reasons for his termination. Rohaley testified the memo was dated the 23rd because "that's the day his suspension started." Tr. at I, 86. The hospital's human resources director Kimberli Lanham testified the memo was dated September 23rd because the hospital was prepared to terminate Rice then, tr. at I 118, and that the letter was prepared "in the event we decided to terminate on the 23rd" and, in sum, the letter was not misdated.[5]

---

3. Defendant argues it was prejudiced because the Court originally denied Plaintiff's motion in limine to exclude the Employment Manual in the Court's Memorandum opinion and Order entered November 18, 1998. The Court's entire statement about that motion in the November 18 Order was: "Without Defendant briefing this issue the Court cannot determine the relevance of the employment manual. Accordingly, the court **DENIES** the motion to exclude the manual." Mem.Op. Order., Nov. 18, 1998 at 10.

4. The Court notes that during trial hospital president and CEO Rohaley agreed with the

Court's interpretation that the hospital Bylaws contain procedures for appeal of termination. Tr. at II 71–2. Rohaley further testified he used neither Rice's contract nor the Bylaws for terminating Rice. *Id.* at 74.

5. Counsel for Defendant represented to the Court during a bench conference that Rohaley had testified the memo was back dated, Tr. at II 67, and represents the same in his memorandum of law. Mem.Supp. Def.'s Mot.J. as Matter of Law at 7. Examination of the transcript, however, reveals no such testimony.

*Id.* at 119. During direct examination, Rohaley was questioned about what he relied on in making his termination decision. At a bench conference during this questioning, Defendant's counsel indicated he wished to question Rohaley about the period of the investigation. The Court ruled, "The question is what he [Rohaley] knew when that letter was written on September 23rd, not what he inquired about later." *Id.* at II 68. Similarly, the Court limited the testimony of Dr. Kyle, director of the hospital emergency department, about information given to Rohaley on which Rohaley had testified he relied, to prior to September 23rd, the date the termination letter was written. Tr. at II 106.

■ In its November 17 Order, the Court relied on *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), to find after-acquired evidence would be relevant only for the limited purpose of determining which remedies are available to plaintiff employee. Ruling on Plaintiff's motion to exclude after-acquired evidence, the Court said, "If Defendant acquired evidence after the termination, sufficient to discharge Plaintiff *under the terms of the contract,* such evidence is relevant to whether Plaintiff may collect the entire post-termination contract value as damages for a breach." Nov. 17 Op. at 9 (emphasis in original). Defendant made no proffer of such evidence acquired after the termination date, whether that date is taken to be September 23rd or September 29th.

Defendant characterizes the Court's exclusion of evidence acquired during the suspension as a "reversal" of its opinion on after-acquired evidence. Evidence acquired during the September 24 to 29 suspension was excluded, not as "after-acquired," but as evidence upon which Rohaley could not have relied in formulating the termination letter written September 23rd.

The Court notes again that this issue was not preserved by objection or motion for review. Accordingly, the Court **DE-** **NIES** the motion for a new trial on this ground.

### 3. Consequential damages:

#### a. Contemplation at contracting

■ This case was tried as a breach of employment contract action. In its Memorandum Opinion and Order of October 13, 1998, the Court granted summary judgment on Plaintiff's defamation claims, finding no publication had occurred. In Defendant's motion in limine to exclude evidence of Plaintiff's income potential past July 1, 2001, the hospital argued Plaintiff's recovery under the contract should be limited to the terms of the agreement, ending July 1, 2001. The Court concludes this assignment encompasses an objection to consideration of consequential damages sufficient to preserve this issue for review.

■ Damages for breach of contract may be either compensatory or consequential. As the West Virginia Supreme Court of Appeals has explained,

*Kentucky Fried Chicken of Morgantown, Inc. v. Sellaro,* 158 W.Va. 708, 214 S.E.2d 823 (1975), authorizes two categories of damages in a breach of contract action. The first is those directly flowing from the contract breach. As to these damages, there is no requirement that the parties must have actually anticipated them because they are a natural consequence of the breach. The second category is indirect or consequential damages that arise from the special circumstances of the contract. In order to recover these damages, *the plaintiff must show that at the time of the contract the parties could reasonably have anticipated that these damages would be a probable result of a breach.*

Syl. pt. 2, *Desco Corp. v. Trushel Constr. Co.,* 186 W.Va. 430, 413 S.E.2d 85 (1991) (emphasis added). On this basis, the Court ruled "Plaintiff's income potential diminution beyond the term of the contract

may be an item of consequential damages if the jury finds he was wrongfully terminated." Nov. 17 Op. at 5.

Citing the emphasized language from *Desco,* Defendant argues that when they formed their employment contract, the parties could not have reasonably anticipated the consequence that a breach of the contract could cause Rice to lose future income. "The parties," Defendant argues, "would have had to foresee a wild chain of events. Dr. Rice will be fired. The reasons for his termination will be manufactured. Those false reasons will blemish Dr. Rice's reputation so severely that he will not be able to obtain employment as an emergency room doctor." Def.'s Reply at 4. This "wild" chain of events is nearly the precise evidence the jury heard of what actually occurred.[6]

 The test of consequential damages is not, however, whether the parties foresaw the actual events of the breach, not that is, whether they were prescient. Rather the test is whether the parties foresaw that if a breach occurred, such damages would be a probable result. Dr. Rice's employment contract contained for-cause termination provisions precisely because firing a professional for no reason and without explanation might prove to be a "kiss of death," [7] for future employability.

 Furthermore, "whether special circumstances exist to show that consequential damages were within the reasonable contemplation of the contracting parties is ordinarily a question of fact for the jury." *Desco,* 186 W.Va. at 436, 413 S.E.2d 85. The jury heard extensive evidence that an emergency room physician,

fired for no reason, would have severe limitations on his ability to secure regular future employment. See *infra* section II. B.3.b. The jury could have concluded, based on that evidence, that such consequential damages were within the reasonable contemplation of the parties. Accordingly, the Court **DENIES** the motion for a new trial on this ground.

### b. Proven with certainty

 Consequential damages must be proven with certainty and cannot be the product of speculation. *Kentucky Fried Chicken v. Sellaro,* 158 W.Va. 708, 716, 214 S.E.2d 823, 828 (1975). Defendant argues that Plaintiff's claim is one for damage to professional reputation and image, which are not awardable in a breach of contract suit.[8] Therefore, any such award must necessarily be speculative.

Plaintiff's evidence, however, went not to loss of reputation or image, but to loss of professional opportunity. In *Redgrave v. Boston Symphony Orchestra, Inc.,* 855 F.2d 888 (1st Cir.1988), the Court aptly distinguished the two:

> [A] plaintiff may receive consequential damages if the plaintiff proves with sufficient evidence that a breach of contract proximately caused the loss of identifiable professional opportunities. This type of claim is sufficiently different from a non-specific allegation of damage to reputation that it appropriately falls outside the general rule that reputation damages are not an acceptable form of contract damage.

*Id.* at 894.

Plaintiff offered extensive evidence of the loss of identifiable professional oppor-

---

6. Defendant consistently mischaracterizes Plaintiff's claim and evidence as support for damage to reputation. Plaintiff's claim and evidence in support was consistently for lost occupational opportunity, as discussed *infra.*

7. Plaintiff's expert, Dr. Hoekstra testified that if a hospital would only say it employed a doctor from this date to that, it would be the

"kiss of death," because obviously "they are hiding something." Tr. at II 8.

8. This Court previously granted Defendant's motion for summary judgment on Plaintiff's claim for defamation, finding no evidence of publication. *Rice v. Community Health Assoc.,* 6:97–1169, slip op. (S.D.W.Va. Oct. 13, 1998).

tunities. Dr. Hoekstra, an emergency room physician at Ohio State University, testified about the credentialing process for emergency room physicians and the hospital's need to know a physician's background and work history before hiring. Hoekstra testified that to work as an emergency room physician, a doctor must affiliate with a hospital, and cannot practice "on his own." Tr. at II 11. As noted previously Hoekstra testified that if a hospital would only say it employed a doctor from this date to that, it would be the "kiss of death." *Id.* at II 8. He also testified that a hospital would hire someone who had been fired for sexual harassment only if it were "desperate." *Id.* at 10. Dr. Lander, director of emergency room medicine at County Community Hospital in Blacksburg, Virginia, similarly testified that he would require a reason for an applicant's having been terminated or fired, and if that reason were sexual harassment, he would not hire him. *Id.* at 42. In Lander's expert opinion, a physician who had been fired for sexual harassment would be prevented throughout his life from working in a hospital. *Id.* at 42.

This evidence does not go to the besmirching of Rice's reputation and his good name, that is defamation, as Defendant argues. Instead, the evidence goes to the professional requirements of hospitals and directors of emergency room services to know the background, particularly the employment history, of any applicant. By firing him for no reason, or for a false reason, the hospital left Rice with an inexplicable hole in his employment history, thus foreseeably causing the loss of professional opportunities.

9. Hoekstra and Lander both testified Rice's earnings at Jackson General Hospital were reasonable for a rural hospital. Tr. at II 13–14, 42. Lander testified that a doctor, like Rice, board certified in emergency medicine, with 13 years' emergency room experience, and not fired for sexual harassment, would be well able to continue earning this amount for the rest of his working life. *Id.* at 42.

Economist Dr. Cobb testified to the projected value of Rice's earnings based on his contract with Defendant hospital.[9] Cobb testified if Rice were to continue to work to the normal retirement age of 66 at the same rate of income, his earnings, reduced to present value, would be $3,259,-560.[10] Tr. at II 25. Plaintiff Dr. Rice testified the amount he had made working for a *locum tenens* or "temporary" agency since termination from the hospital was $55,000 net and $71,000 or $72,000 gross income. Tr. at II 185.

Thus, the jury heard substantial and detailed information on which to base its determination of consequential damages flowing from Rice's lost employment opportunities. With regard to determining damages, the jury was instructed in pertinent part:

> Damages must be reasonable. If you find the Plaintiff is entitled to a verdict, you may award the Plaintiff only such damages as will reasonably compensate him for such damages as you find from a preponderance of the evidence he suffered as a proximate result of the breach of contract and wrongful termination. The existence, cause and amount of damages cannot be based upon a conjecture, guess or speculation on your part. Plaintiff must prove the amount of damage by a preponderance of the evidence.

Accordingly, the Court finds and concludes that consequential damages were not based on speculation, but were proven with reasonable certainty. The Court DENIES the motion for a new trial based on this ground.[11]

10. Plaintiff's Exhibit 4 projected Plaintiff's lifetime earnings for each year through his expected lifespan, reduced to present value.

11. Defendant's grounds numbered 5, evidence of diminished earning capacity; 6, damage to reputation; and 10, evidence of diminution in earning capacity beyond the term of the written contract are simply restatements of the grounds so far considered by the Court as consequential damage issues.

### c. Following an offer of reinstatement

■ Defendant next argues the Court erred in allowing Plaintiff to present evidence of consequential damages after the hospital's offer of reinstatement. Defendant represents that before this trial began on December 15, the hospital offered Rice unconditional reinstatement and back pay. Counsel for the hospital first notified the Court during trial of this ostensible offer at a bench conference.[12] Tr. at I 175. The Court said, "I don't think we'll get into that." *Id.* Defendant did not object. No formal proffer was ever made of the offer of reinstatement.

*Rule* 103(a) of the *Federal Rules of Evidence* provides in pertinent part:

Error may not be predicated upon a ruling which admits or excludes evidence, unless a substantial right of the party is affected, and

. . .

(2) Offer of Proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

In considering this rule, the United States Supreme Court points out that the substance of the evidence sought to admitted may be clear from the context, as it was here. However,

[t]he proponent must also comply with Federal Rule of Civil Procedure 46, which requires that a party seeking to preserve an objection to the court's ruling must 'mak[e] known to the court the action which the party desires the court to take or the party's objection to the action of the court and the grounds therefor.'

*Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 173, 109 S.Ct. 439, 102 L.Ed.2d 445

(1988). Because of Defendant's failure to request admission of the reinstatement offer or to object to its exclusion, this issue also was not preserved for review.

■ The Court notes, however, that was such an offer of reinstatement admitted, it would not have served as grounds for diminution of damages, as Defendant now argues. The Supreme Court of Appeals of West Virginia recognizes in a holding that "an offer of reemployment by an employer will not diminish the employee's recovery if the offer is not accepted if circumstances are such as to render further association between the parties offensive or degrading to the employee." *Voorhees v. Guyan Machinery Co.,* 191 W.Va. 450, 457, 446 S.E.2d 672, 679 (1994). Having fired Rice for sexual harassment with no legal or factual basis, the hospital could not just cheerfully welcome him back, and claim to forgive and forget. In fact, the same day the putative reinstatement offer was said to have been made, hospital president and CEO Rohaley testified that he would not rehire Rice. Tr. at I 84.

The issue of the effect of an offer of reinstatement aside, however, the Court finds and concludes that because this issue was not preserved for review, the motion for a new trial on this ground is **DENIED.**

### d. Punitive or tort damages ostensibly based on malicious conduct at termination

■ Defendant next argues the consequential damages assessed by the jury were prohibited tort damages. Defendant claims, "By limiting defendant's presentation of evidence to the injury [sic], the Court opened the door for plaintiff to argue malicious termination of the contract because defendant had presented no evidence of the events stated in the termination letter."[13] Def.'s Mem. at 8. Defen-

Accordingly, the Court **DENIES** the motion for a new trial based on each of these grounds

Rice had been offered "conditional reemployment." Tr. at I 175.

**12.** According to the transcript, counsel told the Court during a bench conference that

**13.** The Court notes (1) the Court found as a matter of law the evidence was insufficient to

dant further claims, "Plaintiff was then allowed, at trial, to the prejudice of defendant, to argue that the manner in which he was terminated caused a diminution in earning capacity past the five-year term of the contract." *Id.* at 9. Essentially, Defendant argues that only an excluded tort theory could support such an award of consequential damages.

The Court observes that Defendant registered no objection to Plaintiff's closing arguments, which it now claims were prejudicial, nor was any objection made by Defendant to the jury charge on the issues of damages or malice.

Defendant did move in limine to exclude any evidence of malice in Plaintiff's discharge. In denying the motion, the Court quoted *Mason Co. Bd. of Educ. v. State Superintendent of Schools,* 170 W.Va. 632, 636, 295 S.E.2d 719, 725 (1982):

> where an employee was wrongfully discharged out of malice, by which we mean that the discharging agency or official willfully and deliberately violated the employee's rights under circumstances where the agency of individual knew or with reasonable diligence should have known of the employee's rights, then the employee is entitled to a flat back pay award. [i.e., without considering mitigation].

*Id.* (bracketed material added). Following *Mason County,* the Court found malice was relevant to the issue of a flat back pay award as opposed to mitigation.[14]

In its jury instruction regarding malicious discharge, the Court followed *Mason County* and specifically related malice only to mitigation:

Where an employee has been wrongfully discharged out of malice you need not consider whether the plaintiff mitigated his damages. In a malicious discharge, the discharging agency or official willfully and deliberately violated the employee's rights under circumstances where the agency or individual knew or with reasonable diligence should have known of the employee's rights. If you find that (1) the hospital willfully and deliberately violated Dr. Rice's rights and (2) the hospital knew or should have known of those rights, you need not consider mitigation, but may award plaintiff the full value of his contract, considering both salary and benefits.

Malicious conduct at termination is related only to mitigation, not to consequential damages. Accordingly, the Court **DENIES** Defendant's motion for a new trial based on the ground that the award of "future consequential damages based upon the defendant's malicious conduct in terminating the plaintiff's written employment contract is contrary to law," finding this to be a misstatement of the law presented to the jury.

Further, the evidence in this case was that Rohaley ignored and did not consult either Rice's contract or the hospital medical staff bylaws, but rather drew up (or accepted from counsel)[15] a letter on September 23, alleging sexual harassment, violation of federal laws, and "other acts and violations" (none of which were proven at trial), and on the 29th, after an ostensible investigation, gave Rice the termination letter written on the 23rd. The jury properly was permitted to consider this evidence and a reasonable jury could find it

support claims of either sexual harassment or assault, (2) no further evidence supporting either claim was proffered, and (3) Defendant stipulated it had no evidence to support the violation of federal law claimed in the termination letter. Tr. at II 201.

**14.** The Court therefore allowed Defendant to amend the Answer to specifically plead the affirmative defense of mitigation, which Defendant had failed to plead, and allowed

Plaintiff to amend the Complaint to aver malice generally as required by *Federal Rule of Civil Procedure* 9(b). *Rice v. Community Health Assoc.,* 6:97–1169, slip op. (S.D.W.Va. Nov. 17, 1998) at 7.

**15.** Rohaley and Lanham both testified the termination letter was written by counsel for the hospital. Tr. at I 63, 69, II 91.

supported malice as defined in the Court's instruction. Accordingly, the Court **DENIES** Defendant's motion for a new trial based on the grounds that the evidence in the case did not support the Court's instruction on malice or that the jury was improperly permitted to consider this evidence.[16]

 Remaining are Defendant's general arguments that the jury's award of consequential damages was either "tort damages" or punitive.[17] The Defendant registered no such specific objections during the trial. In particular, the Defendant did not object to the jury charge or the verdict form on any remotely related grounds. Defendant moved in limine to disallow any claim for punitive damages. The Court *granted* the motion, agreeing that "[g]enerally, absent an independent, intentional tort committed by the defendant, punitive damages are not available in an action for breach of contract." *Berry v. Nationwide Mut. Fire Ins. Co.*, 181 W.Va. 168, 175, 381 S.E.2d 367, 374 (1989). The Court instructed the jury on punitive damages, using this identical language.

Accordingly, the Court **DENIES** Defendant's motion for a new trial on these grounds. Having evaluated each of the grounds Defendant relies on in its motion for a new trial and finding each of them either not preserved for review or insufficient to sustain such a motion, the Court **DENIES** Defendant's motion for a new trial.

### C. Motion to Amend the Judgment Order

 The jury awarded $751,564 for breach of contract damages, applying no

**16.** Defendant's numbered grounds 11 and 12.

**17.** Defendant's numbered grounds 8 and 13.

**18.** Defendant cites *W.Va.Code* § 56-6-31, which begins, "Except where it is otherwise provided by law, every judgment or decree for the payment of money entered by any court of this State shall bear interest from the date thereof . . . ." Interest on contract actions, however is otherwise provided by law in section 56-6-27 and subsection 31 is thus inapplicable.

offset for mitigation, and $1,418,829 in future consequential damages. Plaintiff moves to amend the Judgment Order to reflect applicable prejudgment interest on those amounts, as the Court determines. In support, Plaintiff relies on W.Va.Code § 56-6-27:

> The jury, in any action founded on contract, may allow interest on the principal due, or any part thereof, and in all cases they shall find the aggregate of principal and interest due at the time of the trial, after allowing all proper credits, payments and sets-off; and judgment shall be entered for such aggregate with interest from the date of the verdict.[18]

In *City National Bank of Charleston v. Toyota Motor Sales*, 181 W.Va. 763, 384 S.E.2d 374 (1989), the Supreme Court of Appeals of West Virginia considered the situation where, as here, Plaintiff failed to request a jury instruction on interest. The Court found *W.Va.Code* § 56-6-27 entitled a claimant in a contract action to have the jury instructed that interest may be allowed on the principal due; however, such claimant was not entitled to the mandatory award of interest contemplated by *W.Va.Code* 56-6-31 since this statute does not apply where the rule concerning interest is otherwise provided by law. *Id.*, 181 W.Va. 763, 384 S.E.2d at 389. The Court concluded:

> Thus, the plaintiff here is not entitled to an award of prejudgment interest after trial, although he could have demanded an instruction to that effect in order to submit the issue to the jury. His failure

> In an action founded on contract, a claimant is entitled to have the jury instructed that interest may be allowed on the principal due, W.Va.Code 56-6-27 [1923], but is not entitled to the mandatory award of interest contemplated by W.Va.Code 56-6-31 [1981], since this statute does not apply where the rule concerning interest is otherwise provided by law.
> *Thompson v. Stuckey*, Syl. pt. 4, 171 W.Va. 483, 300 S.E.2d 295 (1983).

to do so must be deemed a waiver of that right.

*Id.* (citations omitted). Similarly, Plaintiff here has waived the right to a jury instruction on prejudgment interest by failing to request the appropriate jury instruction.

Plaintiff cites *Bd. of Educ. of McDowell County v. Zando, Martin & Milstead, Inc.,* 182 W.Va. 597, 390 S.E.2d 796 (1990) (*"ZMM"*) as a case where the West Virginia court held plaintiff was entitled to an award of prejudgment interest pursuant to a post-trial motion even though the plaintiff pursued a contract action and did not ask for prejudgment interest at trial. In *ZMM* the court acknowledged, "Admittedly, there is some confusion in our cases with regard to prejudgment interest in contract cases." *ZMM,* at 610, 390 S.E.2d at 809. Nowhere in its discussion did the *ZMM* court consider the line of cases culminating in *City National,* nor any other precedent concerning prejudgment interest in contract cases. Rather, the *ZMM* court reasoned (1) the jury found the Board's loss to be one million dollars, (2) *ZMM* does not dispute an award of prejudgment interest would have been proper on a tort judgment, (3) in a prior case tried on both tort and contract principles, the court allowed interest no matter which theory was relied on, and (4) "We believe the Board is entitled to no less." *Id.*

This Court finds itself unable to accept this discursive reasoning for the situation at hand when *City National* disposes of the precise issue presented and accords with the relevant statute. Accordingly, the Court **DENIES** Plaintiff's motion to amend the judgment order to include prejudgment interest.

## III. CONCLUSION

Accordingly, the Court **DENIES** Defendant's motion for judgment as a matter of law, **DENIES** Defendant's motion for a new trial, and **DENIES** Plaintiff's motion to amend the Judgment Order to add prejudgment interest.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.