David J. RICE, Plaintiff–Appellee,

v.

COMMUNITY HEALTH ASSOCIA-
TION, d/b/a/ Jackson General Hos-
pital, Defendant–Appellant.

No. 99–1412.

United States Court of Appeals,
Fourth Circuit.

Argued: Dec. 2, 1999.

Decided: Feb. 8, 2000.

**ARGUED:** Thomas Ryan Goodwin, Goodwin & Goodwin, L.L.P., Charleston, West Virginia, for Appellant. Mark Alan Atkinson, Rose & Atkinson, Charleston, West Virginia, for Appellee. **ON BRIEF:** Carrie Goodwin Fenwick, Goodwin & Goodwin, L.L.P., Charleston, West Virginia, for Appellant. Andrew L. Paternos-

tro, Rose & Atkinson, Charleston, West Virginia, for Appellee.

Before NIEMEYER and MOTZ, Circuit Judges, and BUTZNER, Senior Circuit Judge.

Affirmed in part, vacated in part, and remanded by published opinion. Judge DIANA GRIBBON MOTZ wrote the opinion, in which Judge NIEMEYER and Senior Judge BUTZNER joined.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

This appeal arises from a jury verdict in favor of a doctor on his breach of contract claim against the hospital that had employed him. The jury found that the hospital's discharge of the doctor violated his employment agreement and awarded the doctor both direct breach of contract damages and consequential damages. We affirm the jury's award of direct contractual damages, but vacate the consequential damages award and remand for further proceedings on that issue alone.

### I.

Dr. David J. Rice and the Community Health Association, d/b/a Jackson General Hospital ("Hospital"), entered a five-year written employment agreement, which began on July 1, 1996, and which was to end on July 1, 2001. In late September 1997, the Hospital suspended Rice for alleged sexual harassment, refusal to treat certain patients, and other violations of the employment agreement and employee handbook. Rice, a citizen of Pennsylvania, initiated this diversity action against the Hospital, a West Virginia corporation, alleging two state law claims: defamation and breach of contract.

The district court granted summary judgment to the Hospital on Rice's defamation claim, finding no evidence that the allegedly defamatory statements contained in the Hospital's letter discharging Rice

had been published. *See Rice v. Community Health Ass'n*, 40 F.Supp.2d 788, 795 n. 8 (S.D.W.Va.1999). The breach of contract claim proceeded to trial.

The jury found that the Hospital had wrongfully terminated Rice in violation of the employment agreement, and that the termination was malicious. The jury awarded Rice the full amount requested for direct breach of contract damages—$751,564.00—as well as $1,418,829.00 for future consequential damages. The Hospital appeals, challenging only the damages awards.

■ Although the Hospital filed post-trial motions for judgment as a matter of law, and in the alternative, for a new trial, its failure to comply with Fed.R.Civ.P. 50(a) and move for judgment before the case was submitted to the jury limits the relief it can seek on appeal. As the Hospital acknowledged at oral argument, in light of this failure the only relief it can obtain is a new trial. *See, e.g., Polanco v. City of Austin*, 78 F.3d 968, 974 (5th Cir.1996) (*citing Bunch v. Walter*, 673 F.2d 127, 130 n. 4 (5th Cir.1982)); *cf.* 9 James Wm. Moore et al., *Moore's Federal Practice* §§ 50.09[3][a][ii], [3][c] (3d ed.1999) (explaining that when an appellant has not strictly complied with the procedural requirements of Rule 50(b), an appellate court may order a new trial but may not direct judgment for the appellant).

### II.

Initially and principally, Rice maintains that the Hospital forfeited its right even to seek a new trial because it "failed to timely object to the alleged impropriety giving rise to" its new trial motion. *Dennis v. General Elec. Corp.*, 762 F.2d 365, 367 (4th Cir.1985).

### A.

We first consider this argument with regard to the jury's award of direct breach of contract damages in the amount of

$751,564.00. The Hospital contends that the district court erred when it instructed the jury that it could award Rice the full value of his contract, without regard to Rice's mitigation efforts, if it found that the Hospital had acted with malice in wrongfully discharging Rice. According to the Hospital, under West Virginia law a defendant's malice frees a plaintiff from a duty to mitigate back pay damages, but not from a duty to mitigate front pay damages. *See Mason County Bd. of Educ. v. State Superintendent of Sch.,* 170 W.Va. 632, 295 S.E.2d 719, 725 (1982) (holding that plaintiff entitled to flat back pay award if jury finds employer acted maliciously in breaching contract).

█ The Hospital, however, never objected to the jury instruction that it now claims is erroneous. Rice maintains that for this reason the Hospital failed to preserve its objection to that instruction. In response, the Hospital argues that one of its motions in limine adequately preserved the objection. Motions in limine "preserve issues that they raise without any need for renewed objections at trial, just so long as the movant has clearly identified the ruling sought and the trial court has ruled upon it." *United States v. Williams,* 81 F.3d 1321, 1325 (4th Cir.1996).

After careful review of the motion in limine and the memorandum in support of the motion, we must agree with Rice—the Hospital failed to preserve this objection. First, the Hospital's motion in limine merely refers to its ability to address mitigation of damages generally and cites *Mason County;* the motion does not"clearly identif[y]" the distinction between front pay and back pay damages upon which the Hospital now seeks to rely in arguing for a duty to mitigate despite the jury's finding of malice. *Williams,* 81 F.3d at 1325. Moreover, in denying the motion in limine, the district court, also citing *Mason County,* held that "[m]alice is thus relevant to whether [Rice] is entitled to a flat back pay award or whether, instead, mitigation will reduce that award." Thus, the district court never "ruled" on the issue of whether a defendant's malice relieves a plaintiff of his duty to mitigate front pay damages. *Williams,* 81 F.3d at 1325. Indeed, nothing in the district court's order suggests that it even considered the question of front pay damages. Because the Hospital failed to preserve its objection to the jury instruction, we cannot consider its appellate challenge absent plain error. *See* Fed.R.Evid. 103(d).

█ Wisely, the Hospital does not contend that the instruction constituted plain error. Any such claim would be meritless, for it is not at all clear that the jury instruction was in any way erroneous, let alone plainly so. The district court did not even specifically instruct that front pay damages were not subject to mitigation. Rather, the court merely instructed the jury that if it found that the Hospital acted maliciously it "need not consider the issue of mitigation at all, but ... [could] award [Rice] the full value of his contract." Moreover, even if the court had specifically instructed that malice relieves a plaintiff from mitigating front pay damages, such an instruction hardly constitutes plain error. The holding in *Mason County* did limit the negating effect of malice on mitigation to back pay damages, but those were the only damages at issue in that case. Nothing in *Mason County* or in *Mace v. Charleston Area Med. Ctr. Found., Inc.,* 188 W.Va. 57, 422 S.E.2d 624, 632–33 (1992), another case cited by the Hospital, discusses whether that rationale would or would not apply to front pay damages when the employment contract at issue is one for a term of years.

In sum, the Hospital's failure to preserve its objection to the jury instruction as to mitigation of front pay damages precludes our consideration of this argument on appeal.

## B.

█ We turn to the question of whether the Hospital preserved its objection to the consequential damages award.

In resolving the Hospital's new trial motion, the district court held that the Hospital had raised and preserved this issue. *See Rice,* 40 F.Supp.2d at 794. The court concluded that another motion in limine filed by the Hospital, which the court had expressly ruled on (and denied) prior to trial, raised the Hospital's objection to the consequential damages award. This motion sought to exclude all evidence of Rice's potential income beyond July 1, 2001—the date when his employment agreement with the Hospital ended; the district court held that this motion "encompasse[d] an objection to consideration of consequential damages sufficient to preserve this issue for review." *Id.*

Rice acknowledges that the Hospital "identified" and the district court "ruled upon," *Williams,* 81 F.3d at 1325, the issue of his ability to recover consequential damages for potential income diminution. But Rice maintains that the Hospital did not identify and the district court did not rule on the propriety of consequential damages for "lost professional opportunities," as Rice characterizes them, or for "injury to reputation," as the Hospital characterizes them. Rice claims therefore that the Hospital has also failed to preserve its objection to the consequential damage award. Acceptance of this argument would elevate semantics over substance. The district court properly rejected it, reasoning that "evidence of diminished earning capacity ..., damage to reputation ..., [and] evidence of diminution in earning capacity beyond the term of the written contract are simply restatements of the grounds so far considered by the Court as consequential damage issues." *Rice,* 40 F.Supp.2d at 796 n. 11.

Thus, by timely objecting to Rice's claim for post-contract consequential damages, the Hospital did preserve this issue for appellate review, allowing us to consider whether the Hospital is entitled to a new trial.

## III.

The Hospital contends that West Virginia law does not permit a claim for consequential damages like that pled and proved by Rice, and maintains that the district court committed legal error in denying its motion for a new trial on this ground.

■ Ordinarily, an appellate court reviews a district court's denial of a motion for a new trial only for an abuse of discretion, and seldom finds such abuse. *See, e.g., Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.,* 51 F.3d 1229, 1237 (4th Cir.1995). However, in this case the parties agree that when the district court denied the Hospital's motion for a new trial, rejecting the argument that the law did not permit Rice's consequential damages claim, the court deter-mined a legal question, which we review de novo. *See Munn v. Algee,* 924 F.2d 568, 575 (5th Cir.) (holding that "when the district court's [new trial] ruling is predicated on its view of a question of law, it is subject to de novo review," and "[b]ecause the availability of damages is a question of law, we do not afford the district court's decision any deference"), *cert. denied,* 502 U.S. 900, 112 S.Ct. 277, 116 L.Ed.2d 229 (1991); *see also DeLong Equip. Co. v. Washington Mills Electro Minerals Corp.,* 990 F.2d 1186, 1194 (11th Cir.), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993); *Allstate Ins. Co. v. Springer,* 269 F.2d 805, 808 (6th Cir.1959), *cert. denied,* 361 U.S. 932, 80 S.Ct. 370, 4 L.Ed.2d 353 (1960); 12 James Wm. Moore et al., *Moore's Federal Practice,* § 59.54[2] (3d ed.1999).

■ Under West Virginia contract law, a plaintiff may obtain an award for consequential damages if he proves such damages with reasonable certainty. *See Kentucky Fried Chicken v. Sellaro,* 158 W.Va. 708, 214 S.E.2d 823, 828 (1975). In addition, a plaintiff must demonstrate that when the parties entered the contract they "could reasonably have anticipated" that the claimed consequential damages "would

be a probable result of a breach." *Desco Corp. v. Harry W. Trushel Constr. Co.*, 186 W.Va. 430, 413 S.E.2d 85, 89 (1991) (*citing Sellaro*, 214 S.E.2d at 827). The Hospital argues that Rice's claim for consequential damages does not meet these requirements and is nothing more than a general allegation of damage to reputation. Courts have universally rejected claims for damages to reputation in breach of contract actions reasoning that such damages are too speculative and could not reasonably be presumed to have been contemplated by the parties when they formed the contract. *See Skagway City Sch. Bd. v. J.W. Davis*, 543 P.2d 218, 225 (Alaska 1975) (explaining that a primary reason for this rule is any estimate of damages to reputation "must rest upon a number of imprecise variables," including the causal connection between the breach of contract and the harm, and the potential effect of other factors on any decrease of future earnings), *overruled on other grounds by Diedrich v. City of Ketchikan*, 805 P.2d 362, 366 n. 8 (Alaska 1991); *see also O'Leary v. Sterling Extruder Corp.*, 533 F.Supp. 1205, 1209–10 (E.D.Wis.1982) (citing various cases ascribing to prevailing view that damages for injury to reputation are not available in breach of contract actions).

To support his contention that his is not a "damage to reputation" claim, but a true consequential damage claim, Rice relies exclusively on *Redgrave v. Boston Symphony Orchestra*, 855 F.2d 888 (1st Cir. 1988). There the court carefully scrutinized the rationale underlying the general rule barring damages to reputation for breach of contract. The question arose when the Boston Symphony Orchestra (BSO) canceled its contract with the actress Vanessa Redgrave because of a controversy surrounding her public support of the Palestine Liberation Organization. *Id.* at 890. Redgrave sued the BSO for breach of contract and sought consequential damages "for loss of future professional opportunities." *Id.* at 891. The First Circuit recognized that Massachusetts, like

"virtually all other jurisdictions" that had considered the question, had held that "damages for reputation are not available in contract actions," but concluded that Massachusetts would permit recovery of contractual consequential damages when a plaintiff alleged and proved a claim like Redgrave's. *Id.* at 892.

The *Redgrave* court pointed out that Redgrave had not based her consequential damages claim on "a general claim of damage to reputation." *Id.* at 893. Rather, she asserted "that a number of specific movie and theatre performances that would have been offered to her in the usual course of events were not offered to her as a result of the BSO's cancellation." *Id.* For this reason, although the court substantially reduced the jury's $100,000 consequential damage award, it held that Redgrave was entitled to an award of $12,000 in consequential damages because she had alleged and proved such damages for the "loss of identifiable professional opportunities" in that amount, which the parties could reasonably have anticipated when they entered into the contract. *Id.* at 894.

On appeal, Rice contends that he has made out a similar claim for consequential damages against the Hospital. Specifically, he maintains that he "sought damages for lost professional opportunities caused by the [Hospital]'s breach of contract." Brief of Appellee at 15. Rice further argues that West Virginia law permits the award of such damages.

■■■ Although West Virginia law has not yet explicitly recognized a claim for "consequential harm to [a plaintiff's] professional career" as a result of a breach of employment contract, *id.*, West Virginia courts are generally hospitable to claims for consequential damages. *See, e.g., Desco*, 413 S.E.2d at 91; *Sellaro*, 214 S.E.2d at 828. Moreover, no court—anywhere—has held that a plaintiff cannot recover consequential damages if he has alleged and proved that breach of an employment contract resulted in the loss of future "identi-

fiable professional opportunities," *Redgrave*, 855 F.2d at 894, which the parties could have anticipated at the time they entered into the contract. Therefore, we agree that West Virginia would recognize a claim like Redgrave's. The difficulty with Rice's position is that his claim is not like Redgrave's. In his complaint, Rice did not allege that the Hospital's breach of contract resulted in the loss of future "identifiable professional opportunities" that would have been available to him absent the breach, nor did the district court require him to prove this.

The only damages Rice alleged as resulting from the breach of contract claim were his "monetary compensation" under the contract and "all other damages, losses, and costs, including attorney's fees, which the plaintiff has incurred and/or will incur as a result of the defendant's breach of the Agreement." Rice did not assert that the Hospital's breach of the employment agreement resulted in "harm to his professional career," let alone "loss of identifiable professional opportunities." Rice also failed to offer any evidence to this effect. Comparison of his proof and that found sufficient to support an award of consequential damages to Redgrave is instructive.

Redgrave presented the testimony of New York producer Theodore Mann of the Circle on the Square theatre. Mann testified that the BSO cancellation was one of the reasons he and his partners did not offer Redgrave a role in their production of *Heartbreak House;* he explained that they "were affected by the BSO cancellation because the BSO was a premier arts organization and was dependent on the same type of support as Circle in the Square." *Id.* at 900. The First Circuit held this testimony justified an award of $12,000 in consequential damages, the contemplated fee for Redgrave's performance in *Heartbreak House,* reasoning:

> A jury reasonably could infer that the BSO's cancellation did more than just highlight for Mann the potential prob-

lems that hiring Redgrave would cause but was actually a cause of Mann's decision, perhaps because Mann's theater support was similar to that of the BSO or because Mann felt influenced to follow the example of a "premier arts organization."

*Id.*

By contrast, Rice failed to present any evidence that the Hospital's breach actually influenced any identifiable potential job offers. Instead he offered the expert testimony of two doctors who opined generally that an emergency room physician who was fired for sexual harassment or whose previous employer refused to comment on his qualifications would experience substantial difficulty obtaining a full-time position. These experts did not testify that Rice had applied for employment with them or that they had reviewed applications Rice had submitted to other hospitals. Thus, their testimony, unlike that of the producer in Redgrave, "did [nothing] more than ... highlight ... the potential problems" Rice might experience in obtaining comparable employment. *Id.*

Just as no precedent has held that a plaintiff would not be entitled to consequential damages if he alleged and proved that a contractual breach resulted in the "loss of identifiable professional opportunities," no precedent has held a plaintiff entitled to this sort of consequential damages award in the absence of such specific allegations and proof. We do not believe that a West Virginia court would so hold because, regardless of how such a claim is characterized, it is plagued with the same problems as a claim for consequential damages for injury to reputation: such consequential damages are simply too speculative and the contracting parties cannot reasonably be presumed to have anticipated such damages at the time they entered into a contract.

In the words of the *Redgrave* court, Rice's claim to date constitutes only a "nonspecific allegation of damage to repu-

tation." *Redgrave*, 855 F.2d at 894. Thus, we must conclude that the district court committed legal error in permitting Rice to seek consequential damages for breach of his employment agreement without requiring proof of loss of "identifiable professional opportunities." Because we find that the district court's denial of the Hospital's motion for a new trial on consequential damages was a "misapprehension of the law," *Prytania Park Hotel, Ltd. v. General Star Indem. Co.*, 179 F.3d 169, 173 (5th Cir.1999), we vacate the consequential damages award and remand for further proceedings.

## IV.

■■■■ The only remaining question is the scope of any new trial. A court may, in its discretion, grant the right to a new trial "on all or part of the issues." Fed. R.Civ.P. 59(a). A partial new trial may be granted, however, only if "it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188 (1931). Most commonly courts have granted a partial new trial confined only to damages, *see, e.g., Great Coastal Express, Inc. v. International Bhd. of Teamsters*, 511 F.2d 839, 846–48 (4th Cir.1975), *cert. denied*, 425 U.S. 975, 96 S.Ct. 2176, 48 L.Ed.2d 799 (1976), but a new trial can be limited to any "separable matter[ ]." 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2814 (2d ed.1995); *see also, e.g., Atlas Food Sys. & Serv., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 599 (4th Cir.1996) (rejecting argument that new trial should encompass liability and compensatory damages and upholding new trial limited only to punitive damages); *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 20–21 (2d Cir.1996) (limiting new trial to determination of past and future lost earnings).

■■■■ In this case, we believe it clear that the issue of whether Rice is entitled to consequential damages for "loss of identifiable professional opportunities" is distinct and separable from questions related to his entitlement to direct breach of contract damages. Because these two forms of damages not only require distinct elements of proof, but also focus on different time frames, a partial new trial on the consequential damages issue alone will not result in jury confusion and uncertainty. Tellingly, the Hospital does not claim to the contrary. Moreover, limiting any new trial to consequential damages serves "[c]onsiderations of economy, fairness and repose." *Atlas*, 99 F.3d at 599. It permits a new jury to consider a proper claim for consequential damages but does not allow disturbance of the jury's award for direct contractual damages in the full amount Rice requested; a retrial of both damages issues would endanger the latter award, one which the Hospital has forfeited its right to challenge, and could result in a possible windfall to the Hospital. "Where the issues are separable and error is found in the trial of only one, a new trial may be had as to that issue alone where no injustice will result therefrom." *Mason v. Mathiasen Tanker Indus.*, 298 F.2d 28, 33 (4th Cir.1962). This is such a case. Accordingly, any new trial shall be limited solely to the issue of consequential damages.

## V.

In sum, we affirm the jury's verdict as to the direct breach of contract damages in the amount of $751,564.00. We find, however, that the district court committed legal error in denying the Hospital's motion for a new trial on the basis of its challenge to the consequential damages award. Therefore, we vacate the jury's verdict awarding consequential damages in the amount of $1,418,829.00 and remand to the district court for further proceedings consistent with this opinion.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*